UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**STACY MOCK,** on behalf of herself
and all others similarly situated,

                Plaintiff,                Case No. _ 3:22-cv-00995 (BKS/ML)

v.

**TOMPKINS COMMUNITY BANK**

### CLASS ACTION COMPLAINT

Plaintiff Stacy Mock, on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendant Tompkins Community Bank ("Defendant"), and alleges as follows:

### INTRODUCTION

1. This case concerns Defendant's unlawful business practice of assessing multiple $38 fees[1] on an item.

2. Besides being deceptive, this practice breaches promises made in Defendant's adhesion contract with its customers, attached hereto as Exs. A & B (the "Contract").

3. Plaintiff and other customers of Defendant have been injured by Defendant's improper fee maximization practice. Plaintiff, individually and on behalf of the class of individuals preliminarily defined below, brings claims for Defendant's breach of contract, including the duty of good faith and fair dealing, and/or unjust enrichment, and violation of New York General Business Law § 349, *et seq.*

---

[1] Defendant's assessment of overdraft and insufficient funds fees in the amount of $38 is nearly *$10 higher* than the national average, which is $29.80. *See* The average overdraft fee dropped 11% in the past year from a record of $33.58, but the majority of banks still charge them, Fortune (August 31, 2022), *https://fortune.com/2022/08/31/the-average-overdraft-fee-dropped-in-2022/.*

1

## PARTIES

4. Plaintiff is a citizen and resident of Mount Morris, New York. She has maintained a checking account with Defendant at all times relevant hereto.

5. Defendant is a bank with more than $7.8 billion in assets. Defendant maintains its headquarters and principal place of business in Ithaca, New York. Among other things, Defendant is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the Class, in this district.

## JURISDICTION AND VENUE

6. The Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims and the members of the putative Class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed Class that is comprised of over one hundred members, and because at least one of the members of the proposed Class are citizens of a different state than Defendant.

7. This Court has personal jurisdiction over Defendant because Defendant conducted business in and throughout the Northern District of New York at all times material hereto.

8. Defendant regularly and systematically conducts business and provides retail banking services in this state and provides retail banking services to customers in this state, including Plaintiff and members of the putative Class. As such, it is subject to the jurisdiction of this Court.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District.

## BACKGROUND FACTS

10. Overdraft fees ("OD fees") and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from overdraft fees. Overdraft Revenue Inches Up in 2018, https://bit.ly/3cbHNKV.

11. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. Overdrawn: Consumer Experiences with Overdraft, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

12. Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of OD or NSF fees entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

13. In line with this industry trend, the New York Attorney General recently asked other industry leading banks to end the assessment of all OD Fees by the summer of 2022. *NY Attorney General asks banks to end overdraft fees*, Elizabeth Dilts Marshall, Reuters (April 6, 2022).

14. The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

15. In its latest issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. *See* Ex. C hereto (FDIC Consumer Compliance Supervisory Highlights, Mar. 2022). FDIC examiners have scrutinized this issue in recent exams, with some exams remaining open pending resolution of the issue.

16. In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees" may be deceptive.

17. During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Terms were not clearly defined, and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance.

18. In its staff analysis of the issue, the American Bankers Association recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF

fee will be assessed whenever the same item is resubmitted against insufficient funds. ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges with identifying items that have been resubmitted by the merchant for payment against insufficient funds. ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights.

19. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times.

20. Despite this, Defendant assesses multiple fees on an item and breaches the Contract.

21. Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

I. **DEFENDANT ASSESSES TWO OR MORE FEES ON THE SAME ITEM RETURNED FOR INSUFFICIENT FUNDS**

22. The Contract states:

**Non-Sufficient Funds and Overdrafts.** If your account lacks sufficient funds available to pay a check, preauthorized transfer or other debit activity presented for payment, we may (1) return the item, or (2) pay the item at our discretion. If we return the item without paying it, we may charge you **a non-sufficient funds fee.** If we do pay the item on your behalf, you will be responsible to pay the overdrawn balance and **an overdraft fee.**

Exhibit A at 6 (emphasis added).

23. The Contract further promises that: "**[A]n overdraft fee** of $38.00 will be charged **per item** for covering overdrafts created by check or other electronic means. Exhibit B (emphasis added).

5

24. The Contract therefore promises that a "a non-sufficient funds fee" (singular), or "an overdraft fee" (singular) will be assessed "per item" (singular).

25. In breach of this promise, Defendant assesses multiple fees on an item.

26. The same "item" on an account cannot conceivably become a new one when it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

27. There is zero indication anywhere in the Contract that the same "item" is eligible to incur multiple fees.

28. Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

29. The Contract never discusses a circumstance where Defendant may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

30. In sum, Defendant promises that one fee will be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.

31. Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

32. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a

returned item) when it decides there are insufficient funds in the account. Nowhere do Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

33. Customers reasonably understand, based on the language of the Contract, that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

34. Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it—something Defendant here never did.

35. For example, Community Bank, NA, discloses its fee practice in its online banking agreement as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. ***You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.***

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

36. Defendant's contract provides no such authorization, and actually promises the opposite— Defendant may charge, at most, a fee, per item.

**B.    Plaintiff's Experience**

37. In support of Plaintiff's claim, Plaintiff offers an example of a fee that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

38. On or around May 2, 2022, Plaintiff attempted payment of a single item for $95.78.

39. Defendant returned payment of that item and charged a $38 fee for doing so.

40. Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around May 6, 2022, Defendant processed the item again, this time rejected the item, and charged Plaintiff a second $38 fee for doing so.

41. Defendant knew that this transaction was a reprocessing of the item, as their own account statements designate the item as a "RETRY PYMT."

42. Then, on June 6, 2022, unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, Defendant processed the item for *a third time* and assessed Plaintiff a *third* $38 fee.

43. Defendant knew that this transaction was also a reprocessing of the item, as their own account statements designate the item as a "RETRY PYMT."

44. *In sum, Defendant charged Plaintiff $114 in fees on an item.*

45. Plaintiff understood the payment to be a single item, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

46. On or around May 6, 2022, Plaintiff attempted payment of a single item for $46.99.

47. Defendant returned payment of that item and charged a $38 fee for doing so.

48. Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around May 11, 2022, Defendant processed the item again, this time rejected the item, and charged Plaintiff a second $38 fee for doing so.

49. Defendant knew that this transaction was a reprocessing of the item, as their own account statements designate the item as a "RETRY PYMT."

50. Then, on June 10, 2022, unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, Defendant processed the item for *a third time* and assessed Plaintiff a *third* $38 fee.

51. Defendant knew that this transaction was also a reprocessing of the item, as their own account statements designate the item as a "RETRY PYMT."

52. *In sum, Defendant charged Plaintiff $114 in fees on an item.*

53. Plaintiff understood the payment to be a single item, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

## II.     NONE OF THESE FEES WERE ERRORS.

54. The improper fees charged by Defendant to Plaintiff's account were not errors by Defendant, but rather were intentional charges made by Defendant as part of its standard processing of transactions.

55. Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Defendant's standard practices.

56. Moreover, any such reporting would have been futile as Defendant's own contract admits that Defendant made a decision to charge the fees.

## III.    THE IMPOSITION OF THESE FEES BREACHES DEFENDANT'S DUTY OF GOOD FAITH AND FAIR DEALING

57. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Defendant is prohibited from exercising its discretion to enrich itself

9

and gouge its customers. Indeed, Defendant has a duty to honor payment requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

58. Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers—Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

59. When Defendant charges these fees, it uses its discretion in a way that violates common sense and reasonable consumer expectations and directly causes more fees.

60. In addition, Defendant exercises its discretion in its own favor and to the prejudice of Plaintiff and its other customers. Further, Defendant abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Contract. This is a breach of Defendant's duty to engage in fair dealing and to act in good faith.

61. It was bad faith and totally outside of Plaintiff's reasonable expectations for Defendant to use its discretion to assess improper fees.

62. Defendant abuses its discretion and acts in bad faith by defining terms in an unreasonable way that violates common sense.

## CLASS ALLEGATIONS

63. Plaintiff brings this action individually and as a class action on behalf of the following proposed Class:

> All accountholders of Tompkins Community Bank who, during the applicable statute of limitations, were charged multiple fees on an item by Tompkins Community Bank.

64. Plaintiff reserves the right to modify or amend the definition of the Class as this litigation proceeds.

65. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

66. The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

67. The members of the Class are so numerous that joinder is impractical. The Class consist of thousands of members, the identities of whom are within the exclusive knowledge of Defendant and can be readily ascertained only by resort to Defendant's records.

68. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct in that he has been assessed unlawful overdraft fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of unlawful and unauthorized conduct resulting in injury to all members of the Class. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Class.

69. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

70. Among the questions of law and fact common to the Class include:

   a. Whether Defendant assesses multiple fees on an item;

   b. Whether the practice breaches the Contract;

   c. Whether Defendant breached its covenant of good faith and fair dealing through its fee policies and practices as described herein;

   d. Whether Defendant was unjustly enriched as a result of these fee assessment practices;

   e. Whether Defendant violated the New York General Business Law § 349, *et seq.;*

   f. The proper method or methods by which to measure damages; and

   g. The declaratory and injunctive relief to which the Class are entitled.

71. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

72. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

73. Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

74. Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all Class members, is at risk of additional improper fees. Plaintiff and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its unfair and illegal actions.

## CAUSE OF ACTION ONE
### Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing
*(On Behalf of Plaintiff and the Class)*

75. Plaintiff realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

76. Plaintiff and Defendant have contracted for bank account services, as embodied in the Contract.

77. All contracts entered by Plaintiff and the Class are identical or substantively identical because Defendant's form contracts were used uniformly.

78. Defendant has breached the express terms of its own agreements as described herein.

79. Under New York law, good faith is an element of every contract between financial institutions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

80. Good faith and fair dealing means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

81. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

82. Defendant abused the discretion it granted to itself when it charged multiple fees on an item.

83. Defendant also abused the discretion it granted to itself by defining key terms in a manner that is contrary to reasonable account holders' expectations.

84. In these and other ways, Defendant violated its duty of good faith and fair dealing.

85. Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiff and other members of the Class.

86. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

87. Plaintiff and members of the Class have sustained damages as a result of Defendant's breaches of contract, including breaches of contract through violations of the covenant of good faith and fair dealing.

88. Plaintiff and the members of the Class are entitled to injunctive relief to prevent Defendant from continuing to engage in the foregoing conduct.

### CAUSE OF ACTION TWO
### Unjust Enrichment
### (*On behalf of Plaintiff and the Class*)

89. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

90. Plaintiff, individually and on behalf of the Class, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's breach of contract claims and applies only if the parties' contracts are deemed unconscionable or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees.

91. Plaintiff and members of the Class conferred a benefit on Defendant at the expense of Plaintiff and members of the Class when they paid improper fees.

92. Defendant appreciated this benefit in the form of the substantial revenue that Defendant generates from the imposition of such fees.

93. Defendant has accepted and retained such fees under inequitable and unjust circumstances.

94. Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Class and should be required to make restitution to Plaintiff and members of the Class.

**CAUSE OF ACTION THREE**
**Violations of New York General Business Law § 349,** *et seq.*
*(On Behalf of Plaintiff and the Class)*

95. Plaintiff incorporates by reference the preceding paragraphs.

96. Defendant's practice of charging multiple fees on an item violations New York Business Law § 349 ("NYGBL § 349).

97. NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

98. Defendant is headquartered in New York and has multiple banking locations in New York. Accordingly, Defendant conducts business, trade, or commerce in New York State.

99. In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant's actions were directed at consumers.

100. In the conduct of its business, trade, and commerce, and in furnishing service in New York State, Defendant engaged in deceptive, unfair, and unlawful trade, acts or practices, in violation of NYGBL § 349(a), including but not limited to the following:

    a. Defendant misrepresented material facts pertaining to the sale and/or furnishing of banking services to Plaintiff and the Class that it would not charge more than one fee on an item;

    b. Defendant omitted, suppressed, and concealed the material fact that it would charge more than one fee on an item;

16

101. Defendant systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the class.

102. Defendant willfully engaged in such acts and practices and knew that it violated NYGBL § 349 or showed reckless disregard for whether it violated NYGBL § 349.

103. As a direct and proximate result of Defendant's deceptive banking practices, Plaintiff and members of the Class suffered injury and/or damages, including the payment of deceptive fees, as described herein, and the loss of the benefit of their respective bargains with Defendant.

104. The unfair and deceptive practices by Defendant, as described herein, were immoral, unethical, oppressive, and unscrupulous. These acts cause substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or competition.

105. Further, Defendant's conduct was substantially injurious to Plaintiff and members of the putative Class in that they were forced to pay fees they were told they would not incur.

106. Defendant's actions in engaging in the above-described unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the members of the Plaintiff and putative Class.

107. Had Plaintiff and members of the putative Class known they could be charged the above-described deceptive fees, they would have attempted to avoid incurring such fees.

108. As a result of Defendant's violations of NYGBL § 349, Plaintiff and the putative Class have suffered and will continue to suffer actual damages.

109. Accordingly, Plaintiff and the members of the putative Class are entitled to relief under NYGBL § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorneys' fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and judgment as follows:

    a. Certification for this matter to proceed as a class action;

    b. Designation of Plaintiff as the Class Representative and designation of the undersigned as Class Counsel;

    c. Restitution of all improper fees paid to Defendant by Plaintiff and the Class because of the wrongs alleged herein in an amount to be determined at trial;

    d. Declaring Defendant's fee policies and practices alleged in this Complaint to be wrongful to the extent they are inconsistent with the contract;

    e. Enjoining Defendant from engaging in the practices outlined herein so long as they remain inconsistent with the contract;

    f. Actual damages in amount according to proof;

    g. Pre- and post-judgment interest at the maximum rate permitted by applicable law;

    h. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

    i. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Respectfully submitted,

*/s/ James J. Bilsborrow*
James J. Bilsborrow (Bar Roll #519903)
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
jbilsborrow@weitzlux.com


**JOHNSON FIRM**
Christopher D. Jennings*
Tyler B. Ewigleben*
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com

* *Pro Hac Vice* applications to be submitted

*Counsel for Plaintiff and the Proposed Class*