**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| STACY MOCK, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:22-cv-00995-BKS-ML |
| v. | ) ) | |
| TOMPKINS COMMUNITY BANK, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

      A.    Procedural History ................................................................. 2

      B.    Class Counsel's Investigation ............................................... 3

      C.    Summary of the Key Settlement Terms ................................ 4

            1.    The Settlement Class .................................................. 4

            2.    Relief for the Benefit of the Settlement Class .......... 4

                  a.    Settlement Fund ............................................... 4

                  b.    Distribution of Settlement Class Member Payments ........... 5

                  c.    Disposition of Residual Funds .......................... 5

            3.    Releases ....................................................................... 6

      D.    The Outcome of the Notice Program and Anticipated Distribution of
            Benefits ................................................................................... 6

III.  ARGUMENT ...................................................................................... 7

      A.    Legal Standard for Final Approval ........................................ 7

      B.    The Settlement Satisfies the Criteria for Final Approval .......... 8

            1.    The Settlement is the Product of Good Faith, Informed, and Arm's
                  Length Negotiations .................................................... 9

            2.    The *Grinnell* Factors Support a Final Determination that the
                  Settlement is Fair, Adequate, and Reasonable ........... 10

                  a.    The Risks of Establishing Liability and Damages Demonstrate
                        That This Settlement Is Within the Range of Reasonableness
                        In Light of All Attendant Risks of Litigation and Relative to
                        The Best Possible Recovery .............................. 11

b. The Reaction of Settlement Class Members to the Proposed Settlement ................................................................. 13

c. The Expense, Complexity, and Likely Duration of Further Litigation ................................................................................ 14

d. The Risk of Maintaining Class Action Status Throughout Trial ......................................................................................... 14

e. The Extent of Discovery Completed and the Stage of the Proceedings ........................................................................... 15

f. The Effectiveness of Distributing Relief, the Release, and Equitable Treatment of Class Members ............................... 16

g. The Terms of Any Proposed Award of Attorneys' Fees ......... 17

C. Notice to the Settlement Class Members Was Adequate and Satisfied Rule 23 and Due Process .............................................................................. 18

D. Final Certification of the Settlement Class is Appropriate ..................... 19

E. Notice is Satisfied Pursuant to the Class Action Fairness Act ("CAFA") ..... 19

IV. CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bodnar v. Bank of Am., N.A.,*
No. 14-3224, 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016)........................................................ 12

*Broockmann v. Bank of Greene County,*
No. 1:22-cv-00390 (AMN/ATB), 2023 WL 7019273 (N.D.N.Y. Oct. 25, 2023)... 9, 10, 11, 15, 16

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)................................................................. 7, 8, 10, 11, 15

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001) ...................................................................................... 10

*Edwards v. Mid-Hudson Valley Fed. Credit Union,*
No. 1:22-CV-00562 (TJM) (CFH), 2023 WL 5806409 (N.D.N.Y. Sept. 7, 2023) ......... 9, 11, 14

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005).............................................................................. 15

*Garland v. Cohen & Krassner,*
No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ................... 13

*Godson v. Eltman, Eltman, & Cooper, P.C.,*
328 F.R.D. 35 (W.D.N.Y. 2018).............................................................................. 15

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000)........................................................................................ 7

*Hawthorne v. Umpqua Bank,*
No. 11-cv-06700-JST, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ..................................... 13

*In re Austrian and German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................... 10, 14

*In re Checking Account Overdraft Litig.,*
No. 1:09-MD-02036-JLK, 2015 WL 12641970 (S.D. Fla. May 22, 2015)............................ 12

*In re GSE Bonds Antitrust Litig.,*
No. 19-cv-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020)....................... 7

iii

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................ 7, 17

*Kirby v. FIC Rest., Inc.*,
   No. 5:19-CV-1306 (FJS/ML), 2020 WL 5791582 (N.D.N.Y. Sept. 28, 2020) ......................... 7

*Kommer v. Ford Motor Co.*,
   No. 1:17-CV-0296 (LEK/DJS), 2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020) ...................... 17

*Lowe v. NBT Bank, N.A.*,
   No. 3:19-CV-1400 (MAD/ML), 2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) .................... 11

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................. 13

*Marroquin v. Champlain Valley Specialty of N.Y., Inc.*,
   No. 5:15-cv-00441 (MAD/TWD), 2016 WL 3406111 (N.D.N.Y. June 17, 2016) .................. 10

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ............................................................................... 11

*Roberts v. Capital One, N.A.*,
   719 Fed.Appx. 33 (S.D.N.Y. Dec. 1, 2020) ........................................................... 12

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................. 11

*Story v. SEFCU*,
   No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962 (N.D.N.Y. Feb. 25, 2021) . 7, 8, 9, 11, 13, 14, 15, 16

*Thompson v. Community Bank, N.A.*,
   No. 8:19-CV-919 (MAD/CFH), 2021 WL 4084148 (N.D.N.Y. Sept. 8, 2021) ................. 11, 12

*Wal-Mart Stores v. Visa U.S.A.*,
   396 F.3d 96 (2d Cir. 2005) ......................................................................... 7, 10, 15

## Other Authorities

4 *Newberg and Rubenstein on Class Actions*, § 13:39 (6th ed. 2022) .......................................... 7
4 *Newberg and Rubenstein on Class Actions,* § 13:44 (6th ed. 2022) .......................................... 7

## Rules

F.R.Civ.P., Rule 23 ................................................................................ 2, 7, 8, 16, 17

# I.     INTRODUCTION

Plaintiff Stacy Mock ("Plaintiff") and Class Counsel respectfully submit this Memorandum of Law in Support of her Unopposed Motion for Final Approval of Class Action Settlement. On October 13, 2023, this Court preliminarily approved the Settlement Agreement and Release (the "Agreement")[1] entered into between Plaintiff and Defendant Tompkins Community Bank finding it to be sufficiently fair, adequate, and reasonable, and conditionally certified the Settlement Class for settlement purposes only.

After several rounds of arms' length negotiations made in good faith with the assistance of a third-party natural mediator, Defendant agreed to establish a Settlement Fund for Settlement Class Members in the amount of $450,000 in monetary relief to be directly distributed on a pro rata basis—without the need for Settlement Class Members to submit a claim form or any accompanying proof—in the form of either a credit to Current Account Holders' accounts or cash settlement check mailed to Past Account Holders. This significant monetary benefit constitutes an exceptional result for the Settlement Class and represents a fair, adequate, and reasonable resolution of the Action. The Settlement constitutes approximately 64% of the total damages that potentially could have been recovered through trial. *See* ECF No. 46.

The Settlement has been well received by the Settlement Class. The culmination of the Notice Program has resulted in 4,501 Settlement Class Members that have received direct notice that they will receive a Settlement Class Member Payment from the Net Settlement Fund. Zero Settlement Class Members have objected to the Settlement and zero Settlement Class Members

---

[1] The capitalized terms used herein are defined and have the same meaning as used in the Agreement unless otherwise stated. The Agreement is attached hereto as ***Exhibit A***.

have opted out. In sum, the reaction of the Settlement Class represents an overwhelmingly positive response to the Settlement and only further justifies a grant of final approval.

In light of the excellent result achieved for the Settlement Class, Plaintiff now respectfully requests that the Court: (1) grant Final Approval to the Settlement; (2) affirm its certification of the Settlement Class for settlement purposes only, pursuant to Rule 23(a) and 23(b)(3); (3) affirm its appointment of Stacy Mock as Class Representative; (4) affirm its appointment of Tyler Ewigleben of Jennings PLLC and Sophia Gold of KalielGold PLLC as Class Counsel; (5) find that the Class Notice satisfied the requirements of due process and Rule 23(e)(1); (6) approve the Class Release for all Settlement Class Members as of the Effective Date and permanently enjoin all Settlement Class Members from bringing any of the Released Claims against the Released Parties; and (7) enter the Final Approval Order and Judgment, dismissing the action with prejudice.

## II.  **BACKGROUND**

### A.  **Procedural History**

On September 23, 2022, Plaintiff filed a putative class action complaint in the Action seeking—amongst other relief—damages, restitution, and declaratory relief arising from the allegedly unfair and unconscionable assessment and collection of Retry NSF Fees. Dkt. No. 1. On January 20, 2023, Defendant filed its Answer. Dkt. No. 17. On February 2, 2023, the Parties conferred and submitted the Civil Case Management Plan. Dkt. No. 22.

On February 14, 2023, the Parties served their respective Initial Disclosures. After serving Initial Disclosures, the Parties began discussing the possibility of resolution.

On April 14, 2023, the Parties participated in a mediation before Hon. Richard A. Stone (Ret.), from which the Parties ultimately agreed to a settlement in principle.

On May 1, 2023, the Parties filed a Status Report with the Court, confirming their agreement in principle and requesting that the Court stay all deadlines in the Action. Dkt. No. 36. Further negotiations by the Parties resulted in the Settlement reflected in the Agreement now pending final approval before the Court.

On October 13, 2023, after the Court thoroughly examined the Settlement in its entirety to ensure the Settlement was provisionally fair, adequate, and reasonable, including Plaintiff's letter brief containing supplemental information regarding the Settlement in response to the Court's Text Order, *see* Dkt. Nos. 45, 46, this Court entered its Preliminary Approval Order, preliminarily approving the Settlement and conditionally certifying the Settlement Class for purposes of notice and settlement only. Dkt. No. 50.

The Final Approval Hearing is currently set for March 1, 2024, at 10:00 a.m.

**B.**     **Class Counsel's Investigation**

Class Counsel spent many hours investigating the claims of Ms. Mock against Tompkins Community Bank. Declaration of Tyler Ewigleben ("Ewigleben Decl.") ¶ 2. Class Counsel are familiar with the claims as they have litigated and resolved other fee claims with similar factual and legal issues. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data to calculate each Settlement Class Members' damages. Class Counsel and Defendant, along with the selected data analysis expert, spent a significant amount of time analyzing data regarding Tompkins Community Bank's fee revenue related to the assessment of Retry NSF Fees at issue. *Id.*, ¶ 3. The Parties conferred regarding the calculations' accuracy. *Id.* Consequently, Class Counsel mediated with Hon. Richard A. Stone, fully informed of the merits of Settlement Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and

Settlement Class Members, while being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiff and the Settlement Class. *Id.*, ¶ 4. Hon. Richard A. Stone helped the Parties reach an acceptable compromise. *Id.*, ¶ 5.

In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiff, investigating facts, researching the law, preparing a well-pleaded complaint, working with an expert witness, and reviewing important documents and data. *Id.*, ¶ 6. This resulted in the Settlement for which Final Approval is respectfully requested.

### C. Summary of the Key Settlement Terms

#### 1. The Settlement Class

The Settlement Class is a Fed. Rule of Civ. P. 23(b)(3) opt-out class, defined as:

> All current and former holders of a Tompkins Community Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred more than one Overdraft Fee or NSF Fees as the result of a checking account transaction being represented for payment.

Agreement, ¶ 62. The Class Period is from September 20, 2016, to and including October 13, 2023, the date upon which this Court granted the Settlement Preliminary Approval. *Id.*, ¶ 24.

#### 2. Relief for the Benefit of the Settlement Class

##### a. Settlement Fund

The Settlement Fund is $450,000 and will be used to pay: (a) Settlement Class Members their respective cash Settlement Payments; (b) Class Counsel for any Court-awarded attorneys' fees and costs; (c) any Court-awarded Service Award for the Class Representative; (d) Settlement Administration Costs; and (e) if funds remain after the initial distribution to Settlement Class Members, to distribute to the *cy pres* recipient. Agreement, ¶ 87.

### b.    Distribution of Settlement Class Member Payments

Settlement Class Members who are Current Account Holders when the Net Settlement Fund is distributed will receive a credit in the amount of their Settlement Class Member Payments applied to the account maintained at the time of the fee. *Id.*, ¶ 82. If by the deadline to apply credits of Settlement Class Member Payments to accounts Tompkins Community Bank is unable to complete certain credit(s), Tompkins Community Bank shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for Past Account Holders to receive payment. *Id.*

For Settlement Class Members who are Past Account Holders when the Net Settlement Fund is distributed or at that time do not have an individual account, they shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *Id.* For jointly held accounts, checks will be payable to all customers and mailed to the first customer listed on the account. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* The Settlement Class Member shall have one-hundred twenty (120) days to negotiate the check. Following the potential for a Second Cash Award Distribution, if administratively feasible, the total value of checks uncashed after 120 days shall be distributed to a Court-approved *cy pres* recipient. *Id.*

### c.    Disposition of Residual Funds

Any remaining amounts resulting from uncashed checks shall be distributed to an appropriate *cy pres* recipient agreed to by the Parties and approved by the Court. *Id.*, ¶ 87.

### 3. Releases

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Tompkins Community Bank from claims relating to the subject matter of the Action. The Releases are set forth in Section VII of the Agreement.

### D. The Outcome of the Notice Program and Anticipated Distribution of Benefits

Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, KCC, LLC began disseminating Notice of the Settlement to 4,639 Settlement Class Members in total. *See* Declaration of Annette Kashkarian re: Notice Procedures ("Admin Decl."), ¶ 2. On September 28, 2023, the Settlement Administrator mailed the Postcard Notice to 1,041 Settlement Class Members. *Id.*, ¶ 3. Of the 1,041 Postcard Notices mailed, 175 were returned as undeliverable. *Id.*, ¶ 4. The Settlement Administrator performed address searches for those returned as undeliverable and re-mailed 37 Postcard Notices with updated addresses. *Id.* On November 27, 2023, the Settlement Administrator sent Email Notice to 3,598 Settlement Class Members. *Id.*, ¶ 5. Of the 3,598 Email Notices sent, only 176 bounced back, causing those 176 claimants to receive Postcard Notices. *Id.*, ¶ 6. Thus, to date, a total of 4,501 Settlement Class Members are set to receive a Settlement Class Member Payment either in the form of a credit to Current Account Holders' Accounts or cash settlement check to Past Account Holders. The Notice Program, which was comprised of direct Postcard Notice and Email Notice, as well as Long Form Notice posted on the Settlement Website, has now been completed and the deadline for Settlement Class Members to object or opt-out passed on January 11, 2024. *Id.*, ¶¶ 9-10. There have been zero objections to the Settlement and there have been zero opt-outs. *Id.*

III.  **ARGUMENT**

A.  **Legal Standard for Final Approval**

Courts, including the Second Circuit, emphasize the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.,* 396 F.3d 96, 116 (2d Cir. 2005); *Story v. SEFCU,* No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *7 (N.D.N.Y. Feb. 25, 2021). "Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation." 4 *Newberg and Rubenstein on Class Actions,* § 13:44 (6th ed. 2022). After the Court preliminarily determines that the proposed settlement is fair, adequate, and reasonable, and after notice is sent to the provisionally certified class, the Court, in "taking account of all the information learned during that process" must "decide[] whether or not to give 'final approval' to the settlement." *Id.* at § 13:39.

At final approval, courts often examine both procedural and substantive considerations in determining whether a proposed settlement is fair. *Kirby v. FIC Rest., Inc.,* No. 5:19-CV-1306 (FJS/ML), 2020 WL 5791582 at * 2 (N.D.N.Y. Sept. 28, 2020). "In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.' The Court considers a number of factors laid out in Rule 23(e)(2), as well as in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000), to determine whether this standard has been met." *In re GSE Bonds Antitrust Litig.,* No. 19-cv-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors" following their amendment in December 2018 "add to, rather

than displace, the Grinnell factors" and given their overlap, courts may "consider[] both sets of factors below in its analysis of whether the Court will likely find that the proposed settlement is fair, reasonable, and adequate, and grant final approval"); *Story,* 2021 WL 736962 at *7 ("Courts in the Second Circuit also analyze proposed class-action settlements under the framework set forth in [*Grinnell*] in tandem with Rule 23 to determine whether a class settlement is substantively fair and warrants final approval").

At the final approval stage, Rule 23(e)(2) requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## B.    The Settlement Satisfies the Criteria for Final Approval

Each of the relevant factors weigh in favor of granting Final Approval to the Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good faith, informed, and arm's length negotiations by competent counsel. Furthermore, a review of the factors related to the fairness, adequacy, and reasonableness of the Settlement support that Final Approval is justified.

In weighing the merits of Plaintiff's claims and the defenses asserted against the attendant risks of continued litigation and delay, Plaintiff believes that the Settlement achieves a fair and adequate resolution for both Parties. Plaintiff believes that the claims asserted are meritorious and would prevail if this matter proceeded to trial. Alternatively, Tompkins Community Bank argues

that Plaintiff's claims are unfounded, denies any potential liability, as well as Plaintiff's ability to certify a class, and has consistently indicated a willingness to litigate those claims vigorously. Given the risks, uncertainties, and litigation burdens, Defendant agreed to the terms as set forth in the Agreement.

Ultimately, the Parties concluded that, on balance, the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Ewigleben Decl., ¶ 7.

### 1. The Settlement is the Product of Good Faith, Informed, and Arm's Length Negotiations

A presumption of fairness exists here because the Settlement is the result of arm's-length negotiations by experienced counsel. "A strong initial presumption of fairness attaches to a proposed Settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Story,* 2021 WL 736962, at *7; *see also Broockmann v. Bank of Greene County,* No. 1:22-cv-00390 (AMN/ATB), 2023 WL 7019273, at *8 (N.D.N.Y. Oct. 25, 2023); *Edwards v. Mid-Hudson Valley Fed. Credit Union,* No. 1:22-CV-00562 (TJM) (CFH), 2023 WL 5806409, at *7 (N.D.N.Y. Sept. 7, 2023). Here, the Parties engaged in damages discovery and a mediation conducted in good faith before an experienced mediator. Ewigleben Decl., ¶ 8. Additionally, the Parties consulted an expert to analyze Defendant's transactional data to assist in damages calculations consistent with Plaintiff's theory of liability. *Id.* Counsel for both Parties, as highly experienced trial attorneys and class counsel—particularly in the realm of consumer disputes involving banking fee claims—strongly believe that the Settlement appropriately balances the significant risk and uncertainty with the recovery of the benefits for the Settlement Class. *Id.* Thus, the negotiating process leading up to the Settlement

indicates a presumption of fairness. *See Wal-Mart Stores, Inc.,* 396 F.3d at 116; *see e.g., Broockmann,* 2023 WL 7019273, at *8 (settlement reached after "extensive arm's-length negotiations," "discovery and data analysis," and a "full-day mediation" with a private mediator supported the presumption that the Settlement satisfied due process requirements).

2.      **The *Grinnell* Factors Support a Final Determination that the Settlement is Fair, Adequate, and Reasonable**

Further, a review of the *Grinnell* factors as set forth by the Second Circuit also supports a finding that the Settlement is substantively fair and weighs in favor of granting Final Approval:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell,* 495 F.2d at 463. Importantly, "not every factor must weigh in favor of settlement, rather, the court should consider the totality of these factors in light of the particular circumstances." *Marroquin v. Champlain Valley Specialty of N.Y., Inc.,* No. 5:15-cv-00441 (MAD/TWD), 2016 WL 3406111, at *4 (N.D.N.Y. June 17, 2016) (citations omitted). Each of the relevant *Grinnell* factors weigh heavily in favor of Final Approval.[2]

---

[2] The sole *Grinnell* factor which does not favor settlement is the ability of the defendant to withstand a larger settlement; however, "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir. 2001) (citing *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000)).

a. **The Risks of Establishing Liability and Damages Demonstrate That This Settlement Is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery**

Courts in the Northern District of New York typically analyze the final two factors together: the range of reasonableness of settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *See e.g., Broockmann,* 2023 WL 7019273, at *10; *Story,* 2021 WL 736962, at *9; *Edwards,* 2023 WL 5806409, at *9; *Lowe v. NBT Bank, N.A.,* No. 3:19-CV-1400 (MAD/ML), 2022 WL 4621433, at *9 (N.D.N.Y. Sept. 30, 2022); *Thompson v. Community Bank, N.A.,* No. 8:19-CV-919 (MAD/CFH), 2021 WL 4084148, at *8 (N.D.N.Y. Sept. 8, 2021). "The determination of whether a settlement amount is reasonable 'does not involve the use of a mathematical equation yielding a particularized sum.'" *Story,* 2021 WL 736962, at *9 (citations omitted); *see also Grinnell,* 495 F.2d at 455 n.2 ("In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"). Rather, a settlement is within the "range of reasonableness" where it "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). In making this determination, the court should consider the amount of the Settlement Fund in light of the strengths and weaknesses of Plaintiff's case. *See Story,* 2021 WL 736962 at *9 (citing *Shapiro v. JPMorgan Chase & Co.,* No. 11 Civ. 8331, 2014 WL 1224666, *11 (S.D.N.Y. Mar. 24, 2014)).

Plaintiff's dispute concerns Tompkins Community Bank's allegedly unfair and misleading assessment of Retry NSF Fees—claims which Defendant forcefully denied throughout the litigation. This Settlement achieves Plaintiff's desired goal of compensating Settlement Class Members who were charged these allegedly improper fees during the Class Period. As with any

litigation, there was a substantial risk that Plaintiff would not achieve such a result, or any recovery at all. Indeed, Tompkins Community Bank would have sought summary judgment in its favor after discovery closed. Success on the merits, therefore, was far from certain. Further, Tompkins Community Bank contends that the relevant Account agreements are unambiguous and thus, specifically permit Defendant to assess fees in the manner that Plaintiff challenges here. Thus, although Plaintiff believes she has a strong chance on the merits, it remains possible that Plaintiff would fail to certify her proposed Class or would lose at summary judgment, trial, or on appeal. Ewigleben Decl., ¶ 9.

The Settlement here provides significant relief to Settlement Class Members in light of the risks and weaknesses inherent in the litigation because the Settlement Fund of $450,000.00 cash represents approximately 64% of the Settlement Class's most probable damages if they were to prevail on Plaintiff's claims. Ewigleben Decl., ¶ 10. This recovery is well above the range commonly approved to be fair, adequate, and reasonable in other approved settlements in similar bank fee cases across the country. *See e.g., Thompson,* 2021 WL 4084148, at *8 (N.D.N.Y. Sept. 8, 2021) (finding settlement that represented 39% of defendant's potential damages exposure based on the Value of the Settlement "represents a substantial recovery for Settlement Class Members, particularly in light of the risks of litigation"); *Roberts v. Capital One, N.A.*, No. 1:16-cv-04841-LGS (S.D.N.Y. Dec. 1, 2020) (approving a cash fund representing approximately 35% of relevant overdraft fees alleged by plaintiff); *Bodnar v. Bank of Am., N.A.,* No. 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (approving cash fund representing 13%-48% of the maximum damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and "outstanding"); *In re Checking Account Overdraft Litig.,* No. 1:09-MD-02036-JLK, 2015 WL 12641970, at *7 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement

representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank,* No. 11-cv-06700-JST, 2015 WL 1927342, at *3 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial).

As such, the Settlement represents an excellent result for the Settlement Class that guarantees them a meaningful recovery now, as opposed to continued litigation that would only provide a chance at a marginally greater recovery after years or risk, delay, and expense. The immediate relief afforded Settlement Class Members in light of the possible amount they would have recovered at trial supports final approval. *See Garland v. Cohen & Krassner,* No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) (finding "the benefits of immediate recovery outweigh the risks associated with ongoing litigation" in consumer class action).

### b. The Reaction of Settlement Class Members to the Proposed Settlement

Second, and "perhaps the most significant factor to be weighed in considering [the Settlement's] adequacy" is the reaction of the Settlement Class. *Story,* 2021 WL 736962, at *8 (quoting *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)). Indeed, "[t]he lack of class member objections may itself be taken as evidencing the fairness of a settlement." *Id.* (internal quotation marks and citations omitted). Here, the reaction of the Settlement Class is overwhelmingly positive. Out of 4,501 Settlement Class Members who have received direct Notice, zero have opted-out and zero objections have been filed. Admin Decl., ¶¶ 9-10. As such, this factor also favors Final Approval. *See e.g., id.* (finding six opt-outs and zero objections favored final approval).

### c.     The Expense, Complexity, and Likely Duration of Further Litigation

Third, the complexity, expense, and likely duration of litigation favors Final Approval. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Edwards,* 2023 WL 5806409, at \*7 (citing *In re Austrian,* 80 F. Supp. 2d at 174)). Although Plaintiff is confident in the merits of her claims, the risks involved in prosecuting a class action cannot be disregarded. Plaintiff's claims would still need to survive additional forthcoming motion practice and succeed at class certification. Ewigleben Decl., ¶ 11. The delay attendant in continuing to litigate this case also favors approval of the Settlement. Significant time and additional costs would be required for the Parties and the Court to complete pre-trial proceedings, summary judgment, motions challenging experts, and class certification. After trial, the Parties could appeal the Court's class certification and summary judgment decisions, which could take years to complete. Assuming the parties went to trial and verdict, there would remain the possibility that the verdict could be reversed by this Court on appeal. *Id.*, ¶ 12; *see e.g., Story,* 2021 WL 736962 at \*8 (finding that settlement "avoided the delay that necessarily would have followed motion practice and the time needed for the Court to act on those motions," including "a length and complex trial" that would "consume tremendous time and resources"). By contrast, the proposed Settlement provides the Class with substantial, guaranteed relief now. Thus, this *Grinnell* factor clearly supports Final Approval.

### d.     The Risk of Maintaining Class Action Status Throughout Trial

Fourth, it is uncertain that this case would be certified in the absence of settlement: if the Settlement were not approved by this Court, Tompkins Community Bank would likely oppose class certification, creating an "appreciable risk to the class members' potential for recovery and even if plaintiff[] could obtain class certification, there could be a risk of decertification at a later

stage." *Godson v. Eltman, Eltman, & Cooper, P.C.,* 328 F.R.D. 35, 57 (W.D.N.Y. 2018) (citations and internal quotation marks omitted). And given Tompkins Community Bank's defense of this Action thus far, Defendant would also likely appeal any grant of class certification. Indeed, while Plaintiff might prevail, "the risk that the case might not be certified is not illusory and weighs in favor of Class Settlement." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *see also Broockmann,* 2023 WL 7019273, at *9 (recognizing the risks and expenses associated with obtaining and maintaining class certification, including "further discovery and exhaustive briefing by the parties"). Additionally, Plaintiff acknowledges that if the Settlement Class became a nationwide litigation class, there could be manageability concerns at trial which could lead to class decertification. *See id.* (noting "there is always the risk of decertification after the close of discovery").

### e. The Extent of Discovery Completed and The Stage of The Proceedings

Next, the stage of the proceedings and amount of discovery completed support Final Approval. This factor is evaluated to ensure that an adequate amount of work has been completed to apprise counsel with a "thorough understanding of their case" and "leaving relatively few unknowns prior to trial." *Wal-Mart Stores,* 396 F.3d at 118; *see also Story,* 2021 WL 736962, at *8 (noting this *Grinnell* factor "considers the amount of discovery completed, with a focus [ ] on whether the plaintiffs obtained sufficient information through the discovery to properly evaluate their case and to assess the adequacy of any settlement proposal"). Here, settlement was informed with the benefit of Class Counsel's years of experience litigating banking fee cases just like this one, including familiarity with the transactional data and damages analysis. Ewigleben Decl., ¶ 13. Due to their extensive experience, the Parties' counsel are well aware of the relative strengths and weaknesses of their respective cases, which informed the negotiations between counsel.

Ultimately, Class Counsel's analysis and experience allowed them to confidently evaluate Plaintiff's claims' strengths and weaknesses, the risks attendant to continued litigation, and the benefits of settlement. Moreover, the Parties engaged in extensive data and damages analysis as informed by their expert's calculations prior to agreeing to the Settlement terms. Ewigleben Decl., ¶ 14. Thus, the Parties undoubtedly had sufficient information to adequately assess the merits of the Action and to weigh the benefits of settlement prior to entering into the Agreement. *See e.g., Broockmann,* 2023 WL 7019273, at *9 (finding this factor supported final approval where the parties "exchanged discovery as well as a separate production of transactional data, which was analyzed by a data expert").

> **f.    The Effectiveness of Distributing Relief, the Release, and Equitable Treatment of Class Members**

The remaining provisions regarding the adequacy of the Settlement's relief under Fed. R. Civ. P. 23(e) also favor granting Final Approval. For example, Rule 23(e)(2)(C)(ii) examines "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Settlement's plan for allocation of the Settlement benefits is straightforward: Settlement Class Members will receive either a credit or cash Payment on a pro rata basis. *See* Agreement, ¶ 82. Further, the Settlement's plan for distribution is efficient in that it accounts for varying methods of distribution based upon whether the Settlement Class Member is a Current Account Holder or Past Account Holder. *Id.* Pro rata allocation and distribution plans of this nature have been found to satisfy the Rule. *See e.g., Story,* 2021 WL 736962 at *10; *Broockmann,* 2023 WL 7019273, at *11.

Rule 23(e)(2)(D) asks whether class members are treated equally to each other, and such consideration "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may

affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, Advisory Committee's note on 2018 amendment. Here, because the Settlement distributes payment on a pro rata basis, Settlement Class Members will be treated equitably. *See e.g., id.* at *11 (collecting cases).

Further, because each Settlement Class Member will be required to sign the same Release, which uniformly releases Tompkins Community Bank from all claims relating to the subject matter of the instant Action and does not affect the apportionment of relief to Settlement Class Members, this factor also weighs in favor of granting Final Approval. *See In re Payment Card,* 330 F.R.D. at 47.

### g. The Terms of Any Proposed Award of Attorneys' Fees

Lastly, Rule 23(e)(2)(C)(iii) concerns the terms of any proposed award of attorney's fees. "Federal courts have long recognized that a lawyer whose efforts create a common fund may recover a reasonable fee from the fund as a whole." *Kommer v. Ford Motor Co.,* No. 1:17-CV-0296 (LEK/DJS), 2020 WL 7356715, at *5 (N.D.N.Y. Dec. 15, 2020). Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Ewigleben Decl., ¶ 15. Under the Agreement, Class Counsel are entitled to request, and Tompkins Community Bank will not oppose, attorneys' fees of up to 33.33% of the Settlement Fund, as well as reimbursement of litigation costs incurred in connection with the Action. Agreement, ¶ 131. Class Counsel has already filed its application for Attorneys' Fees and Costs, and Service Award for the Class Representative with the Court, *see* ECF No. 51, and will be heard by the Court contemporaneously with this Motion at the Final Approval Hearing.

**C.    Notice to the Settlement Class Members Was Adequate and Satisfied Rule 23 and Due Process**

As this Court held when granting Preliminary Approval, the Postcard Notice, Email Notice, and Long Form Notice posted on the Settlement Website is the best notice practicable under the circumstances. After the Court granted Preliminary Approval, the Settlement Administrator provided direct Postcard and Email Notice to all Settlement Class Members via the addresses contained in Tompkins' business records. Of the 4,639 total Postcard Notices and Email Notices that were sent, just 138 notices were returned as undeliverable with no forwarding or additional addresses to follow up with mailing a Postcard Notice. Admin Decl., ¶¶ 4, 6. This results in a successful deliverable rate of approximately 97%.

Class Notice has also been effectuated via the Settlement Website. The Settlement Administrator established the Settlement Website, which included key information about the Settlement, including, but not limited to the Long Form Notice, a copy of the Agreement, the Preliminary Approval order, the date of the Final Approval Hearing, and how to object to or opt-out of the Settlement. *Id.*, ¶ 7. The Settlement Administrator received zero opt-outs in the Settlement and zero objections. *Id.*, ¶¶ 9-10.

Ultimately, the Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant has available about the Settlement Class. Ewigleben Decl., ¶ 16. Further, each form of Notice was reasonably calculated under the circumstances to apprise Settlement Class Members of the material terms of the Settlement, including their deadlines to opt-out or object to the Settlement and the consequences of each. As such, the Notice and Notice Program constituted sufficient notice to all Settlement Class Members and satisfied all applicable requirements of the law, including Fed. R. Civ. P. 23 and due process. *Id.*

### D. Final Certification of the Settlement Class is Appropriate

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class for settlement purposes only. Dkt. No. 50 at ¶¶ 4-6. Plaintiff now respectfully requests that the Court affirm that decision and finally certify the Settlement Class defined as:

> All current and former holders of a Tompkins Community Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred more than one Overdraft Fee or NSF Fee as the result of a checking account transaction being represented for payment.

Preliminary Approval Order, ¶ 4. Excluded from the Settlement Class are all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiff's counsel and Tompkins officers and employees. *Id.*

For the reasons explained in Plaintiff's Motion for Preliminary Approval and for the reasons stated in the Court's Preliminary Approval Order, *see* Dkt. Nos. 44-1, 50, the Settlement Class should be finally certified for settlement purposes and the Court should affirm its certification of the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3).

### E. Notice is Satisfied Pursuant to the Class Action Fairness Act ("CAFA")

CAFA requires that settling defendants give notice of a proposed class action settlement to the appropriate state and federal officials. 28 U.S.C. § 1715(b). On Augsut 3, 2023, the Settlement Administrator served the CAFA notice, along with a CD containing the documents described in Section 1715(b). *See* Admin. Decl., ¶¶ 2-3. To date, no regulatory authorities have objected to the Settlement. *Id.*, ¶ 4.

## IV. <u>CONCLUSION</u>

In light of the foregoing, Plaintiff respectfully requests that the Court: (1) grant Final Approval to the Settlement; (2) affirm its certification of the Settlement Class for settlement

purposes only, pursuant to Rule 23(a) and 23(b)(3); (3) affirm its appointment of Stacy Mock as Class Representative; (4) affirm its appointment of Tyler Ewigleben of the Johnson Firm and Sophia Gold of KalielGold PLLC as Class Counsel; (5) find that the Class Notice satisfied the requirements of due process and Rule 23(e)(1); (6) approve the Class Release for all Settlement Class Members as of the Effective Date and permanently enjoin all Settlement Class Members from bringing any of the Released Claims against the Released Parties; and (7) enter the Final Approval Order and Judgment, dismissing the action with prejudice. For the Court's convenience, a Proposed Final Approval Order and Judgment of Dismissal is attached as Exhibit 2 to the Agreement.

Dated: February 16, 2024

Respectfully submitted,

By: */s/ Sophia Goren Gold*
Sophia G. Gold (Bar Roll No. 701241)
**KalielGold PLLC**
950 Gilman Street, Suite 200
Berkeley, CA 94710
Tel: (202) 350-4783
sgold@kalielgold.com

Jeffrey D. Kaliel (Bar Roll No. 518372)
**KalielGold PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
jkaliel@kalielpllc.com

Tyler B. Ewigleben (Bar Roll No. 704117)
Christopher D. Jennings
(Bar Roll No. 701478)
**Jennnigs PLLC**
P.O. Box 25972
Little Rock, AR 72221
Telephone: (317) 695-1712
Email: chris@jenningspllc.com
Email: tyler@jenningspllc.com

*Attorneys for Plaintiff and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2024, the foregoing was served by CM/ECF to all counsel of record.

<div style="margin-left: 40%;">

*/s/Sophia Goren Gold*

Sophia Goren Gold (Bar Roll No. 701241)

</div>