# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement") is entered into by and between Tompkins Community Bank ("Defendant" or "Tompkins," as defined herein), and Stacy Mock ("Plaintiff," as defined herein), subject to the Court's preliminary and final approval as required by Rule 23 of the Federal Rules of Civil Procedure. As provided herein, Tompkins, Class Counsel (as defined herein) and Plaintiff hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the court of a Final Order and Judgment, all claims of the Settlement Class against Tompkins in the action currently pending in the United States District Court for the Northern District of New York as *Mock v. Tompkins Community Bank*, Case No. 3:22-cv-00995 (the "Litigation"), shall be settled, compromised, and dismissed upon the terms and conditions contained herein.

## I. RECITALS

The following recitals and the exhibits to this Agreement ("Exhibits") are material terms of this Settlement Agreement. Capitalized terms as used in these Recitals and the Exhibits hereto shall have the meaning ascribed to them herein and in the Definitions below. This Settlement Agreement is made with reference to, and in contemplation of, the following facts and circumstances:

1. Plaintiff in this Litigation challenges the methodology Tompkins uses to assess the Challenged Fees (defined below). On September 20, 2022, Plaintiff filed her original Class Action Complaint ("Complaint") alleging that Tompkins improperly charged its checking account customers more than one fees in connection with checking transactions presented multiple times for payment.

2. Plaintiff asserts four claims on this basis: (i) Breach of Contract; (ii) Breach of the Covenant of Good Faith and Fair Dealing; (iii) Unjust Enrichment; and (iv) Violation of New York General Business Law § 349, et seq.

3. Plaintiff takes the position in this Litigation that the Challenged Fees (defined below) were improper.

4. Tompkins filed its answer on January 20, 2023. After holding a scheduling conference on February 11, 2023 and issuing a pretrial scheduling order, Judge Lovric referred the parties to mandatory mediation in an order dated February 21, 2023.

5. On April 21, 2023, the Parties participated in good faith in the scheduled mediation (the "Mediation") before Judge Richard A. Stone (ret.) (the "Mediator"). At the conclusion of the Mediation, the Parties arrived at the settlement in principle.

6. This Settlement Agreement resulted from a good faith, arm's-length settlement negotiations, including the Mediation.

7. Tompkins denies any liability or wrongdoing of any kind associated with the alleged claims in the Litigation. Tompkins has denied and continues to deny all claims asserted or that could have been asserted, against it in the Litigation. Nothing herein shall constitute an

admission of wrongdoing or liability, or of the truth of any allegations in the Litigation. Nothing herein shall constitute an admission by Tompkins that the Litigation has been properly brought on a class or representative basis, or that classes may be certified in the Litigation, other than for settlement purposes. To this end, the settlement of the Litigation, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the settlement: (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Tompkins or of the truth of any of the allegations in the Litigation; (ii) are not and shall not be deemed to be, and may not be used as an admission or evidence of any fault or omission on the part of Tompkins in any civil, criminal, or administrative proceeding in any court, arbitration forum, administrative agency, or other tribunal; and (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims: (a) for class certification; or (b) for dispute resolution through any other mechanism.

8. Class Counsel have investigated the facts and the law regarding the Litigation. Class Counsel and their expert have reviewed account data provided by Tompkins.

9. Based on their investigation, Class Counsel have concluded that a settlement according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of Plaintiff and the Class Members (as defined herein) recognizing: (i) the existence of complex and contested issues of law and fact; (ii) the risks inherent in litigation; (iii) the likelihood that future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement; (iv) the magnitude of the benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever; and (v) Plaintiff's determination that the settlement is fair, reasonable, adequate, and will substantially benefit the Class Members.

10. The Parties shall use their best efforts to effectuate this Agreement, including, but not limited to, cooperating in promptly seeking the Court's approval of this Agreement, certification of the Settlement Class, and release by the Releasors of the Released Claims.

11. No Party shall be deemed the drafter of this Agreement or any provision thereof. No presumption shall be deemed to exist in favor of or against any Party as a result of the preparation or negotiation of this Agreement.

12. This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the state of New York without regard to conflict of laws principles. If any dispute related to this Settlement Agreement arises, the Parties agree to attempt to resolve the dispute in the first instance via mediation before Judge Stone.

13. Nothing express or implied in this Agreement is intended or shall be construed to confer upon or give any person or entity other than the Parties, Released Parties, and Settlement Class Members any right or remedy under or by reason of this Agreement. Each of the Released Parties is an intended third-party beneficiary of this Agreement with respect to the Released Claims and shall have the right and power to enforce the release of the Released Claims in his, her, or its favor against all Releasors.

14. This Agreement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Settlement Agreement.

15. This Agreement may not be modified or amended unless such modification or amendment is in writing executed by the Parties, except as specifically permitted by this Agreement.

16. Where this Agreement requires any Party to provide notice or any other communication or document to any other Party, such notice, communication, or document shall be provided by email or letter by overnight delivery to their Counsel in the Litigation using the mail and email addresses identified in this Agreement.

17. In consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Litigation be settled and compromised, and that the Releasors release the Released Parties of the Released Claims, without costs as to the Released Parties, Plaintiff, Class Counsel, or the Settlement Class, except as explicitly provided in this Agreement, subject to the approval of the Court, with respect to all Recitals in Section I of this Agreement and the following terms and conditions.

## II. DEFINITIONS

In addition to the terms defined at various points within this Agreement, the following defined terms ("Definitions"), as used in this Agreement and the attached Exhibits, apply and shall have the following meanings:

18. "Administrative Expenses" shall mean the expenses associated with the Settlement Administrator and the performance of the Settlement Administrator's duties hereunder, including but not limited to, costs in providing notice, maintaining the Settlement Website, maintaining or disbursing the Settlement Fund, communicating with Class Members or Counsel for the Parties, and disbursing Cash Award payments to the proposed Settlement Class Members, or disbursing any other payments called for hereunder.

19. "Cash Award" means a cash payment to an eligible Settlement Class Member as described in Section VI of this Agreement.

20. "Challenged Fees" mean fees challenged by Plaintiff in this lawsuit including Overdraft Fees and non-sufficient fund ("NSF") fees that may be assessed when an ACH or check transaction is presented multiple times for payment.

21. "Class" or "Class Members" mean all current and former holders of a Tompkins Community Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred more than one Overdraft Fee or NSF Fee as a result of a checking account transaction being represented for payment. "Class" excludes all judicial officers presiding over this Litigation and their staff, and any of their immediate family members, as well as Plaintiff's counsel and Tompkins' officers and employees.

22. "Class Counsel" refers individually and collectively to James J. Bilsborrow of Weitz & Luxenberg, PC; Tyler B. Ewigleben of Johnson Firm; and Sophia Gold of Kaliel Gold PLLC.

23. "Class List" means a confidential (unredacted) compilation of Settlement Class Members, identified by name and mail address, denoting each Settlement Class Member's calculated Cash Award amount. The Class List shall be compiled by the Settlement Administrator, using information provided by Tompkins. The Class List shall be kept and maintained by Tompkins and Tompkins' Counsel, and shall be disclosed only as described in Paragraph 80, *infra*. The Settlement Administrator shall prepare and provide to Class Counsel a redacted, anonymized version of the Class List ("Redacted Class List") denoting Class Members by a unique identifier number.

24. "Class Period" is defined as September 20, 2016 to and including the date on which the Court enters a Preliminary Approval Order as to this Settlement Agreement.

25. "Class Release" shall have the meaning set forth in Section VII of this Agreement.

26. "Class Representative" or "Plaintiff" refers to Stacy Mock, the named plaintiff in the Litigation.

27. "Counsel" refers collectively to both Class Counsel and Tompkins' Counsel, as defined herein.

28. "Court" shall mean the United States District Court for the Northern District of New York and the Honorable Judge Miroslav Lovric, and his successors, if any.

29. "De-Identified Notice Database" means a de-identified version of the Notice Database (as defined herein) with the names and mail addresses of Class Members removed such that Members are identifiable solely by reference to the randomly generated numbers associated with each Class Member.

30. "Effective Date" shall mean five (5) business days after all of the following events or conditions have occurred:

a. the Court has entered a Final order with respect to any attorneys' fees and expenses to be awarded to Class Counsel, and with respect to any Service Award to Plaintiff, and any such order(s) is/are final and non-appealable;

b. the time for appeal has expired and no appeal has been timely filed; or the settlement is affirmed on appeal without material change; no other appeal or petition is pending, and the time period during which any petition for rehearing or certiorari could be filed has expired and relief from the failure to file such a petition is not available; and

c. the Final Approval Order and judgment of dismissal are Final as defined herein.

31. "Email Notice" means the notice of proposed class action settlement that will be provided to Tompkins accountholders who have provided an email address to Tompkins in accordance with Paragraph 107 of this Agreement, to be approved by the Court, and substantially in the form attached hereto as Exhibit 4.

32. "Escrow Account" means the escrow account established by the Settlement Administrator to hold the Settlement Fund following the Settlement Funding Deadline (defined in Paragraph 65 *infra*).

33. "Execution Date" shall mean the date on which this Agreement is fully executed by all Parties.

34. "Final" means the Final Approval Order and judgment of dismissal have been entered on the Court's docket in the Litigation and: (a) the time to appeal from such order and judgment has expired and no appeal has been timely filed; (b) if such an appeal has been filed, it has been finally resolved and has resulted in an affirmation of the Final Approval Order and judgment; or (c) the Court following the resolution of the appeal enters a further order or orders approving settlement on the material terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s).

35. "Final Approval Hearing" means the hearing before the Court in which Plaintiff will request the Final Approval Order be entered by the Court approving the Settlement Agreement, approving Class Counsel's request for an award of attorneys' fees and costs, and approving a Service Award to the Class Representatives. The Parties will request that the Court schedule the Final Approval Hearing no fewer than one hundred twenty (120) days after entry of the Preliminary Approval Order.

36. "Final Approval Order" shall mean the final approval order and judgment of dismissal substantially in the form as shown in Exhibit 2, or as otherwise agreed to by the Parties, to be entered by the Court, granting final approval of the settlement. The Final Approval Order shall contain such provisions as set forth in Exhibit 2 and described in Section XIV. The form of the Final Approval Order and Judgment as attached hereto as Exhibit 2 is a material term of this Settlement Agreement.

37. "Long Form Notice" means the notice of proposed class action settlement that will be posted on the Settlement Website pursuant to Section X, *infra*, to be approved by the Court, and substantially in the form as Exhibit 5 to this Agreement.

38. "Net Settlement Fund" shall have the meaning set forth in Paragraph 72 of this Agreement.

39. "NSF Fees" are nonsufficient funds fees charged by Tompkins when it returns an item because the balance in the customer's account was not sufficient to cover the transaction.

40. "Notice" or "Settlement Class Notice" means the notice of proposed class action settlement that will be provided: (i) via email for current Class Members who have provided their email address to Tompkins; (ii) via U.S. mail to Class Members who have not provided an email address or to whom the Email Notice is not successfully delivered; and/or (iii) via posting of the

Long Form Notice on the Settlement Website, all pursuant to Section X of this Settlement Agreement, which the Parties will ask the Court to approve in connection with the motion for preliminary approval of the settlement, substantially in the forms attached hereto as Exhibits 3 (Postcard Notice), 4 (Email Notice), and 5 (Long Form Notice).

41. "Notice Database" means a file containing data sufficient to identify, to the extent reasonably available in Tompkins' records, each Class Member's name, last known email address, and last known mail address.

42. "Notice Program" means the method provided for in this Settlement Agreement for giving Notice to Class Members, as provided in Section X, *infra,* of this Settlement Agreement.

43. "Opt-Out" shall mean a written request for exclusion from the Settlement Class as provided in Section XI of this Settlement Agreement.

44. "Opt-Out Period" shall have the meaning set forth in Section XI of this Settlement Agreement.

45. "Overdraft Fees" are paid item fees that Tompkins charged customers when the balance in the customer's account was insufficient to fully cover the amount of the customer's transaction but Tompkins paid the item.

46. "Party" or "Parties" shall mean Tompkins, Plaintiff, and the proposed Settlement Class Members.

47. "Postcard Notice" means the notice of proposed class action settlement that will be provided via U.S. Mail in accordance with the procedures set forth in Paragraph 107 of this Agreement, to be approved by the Court, substantially in the form attached hereto as Exhibit 3.

48. "Preliminary Approval Order" shall mean an order substantially in the form as shown in Exhibit 1 to be entered by the Court preliminarily approving the Settlement Agreement. The Preliminary Approval Order shall contain such provision as set forth in Exhibit 1 and described in Section VIII.

49. "Released Claims" shall mean the claims against the Released Parties described in Paragraph 91 of this Agreement.

50. "Released Parties" means Tompkins and each of its respective past, present, and future parents, subsidiaries, acquired and affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, agents, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives.

51. "Releasors" shall refer, jointly and severally, and individually and collectively, to Plaintiff, the Settlement Class Members, and each of their predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, through, or on behalf of them.

52. "Residual Funds" shall refer to all proceeds remaining in the Net Settlement Fund following the initial Cash Award distributions provided for in Section VI(b), *infra*.

53. "Service Award" means the award that the Court may individually provide to Plaintiff in connection with her participation in this Litigation to be paid solely from the Settlement Fund.

54. "Settlement Administrator" means the entity (which will be mutually selected and retained by the Parties), to administer the settlement and perform all settlement, escrow, notice, fund distribution, and such other administration functions set forth in this Agreement. Tompkins will also execute a Non-Disclosure Agreement ("NDA") with the Settlement Administrator to protect Class Members' personally identifiable financial and other confidential information. Tompkins' Counsel and Class Counsel may, by agreement, substitute a different organization to perform some or all of the functions of the Settlement Administrator, subject to approval by the Court if the Court has previously granted Preliminary Approval or Final Approval of the settlement.

55. "Settlement Class" or "Settlement Class Members" shall mean all persons who are members of the Class who do not timely and validly request exclusion from the Settlement Class. The persons comprising the Settlement Class shall be identified by name and mail address on the confidential Class List to be created by the Settlement Administrator.

56. "Settlement Amount" means the total sum of $450,000 (Four Hundred and Fifty Thousand Dollars) that Tompkins will pay to settle the Litigation and obtain a release of all Released Claims.

57. "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following the Preliminary Approval Order, and prior to issuance of the Email Notice and the Postcard Notice, as a means for Class Members to obtain notice and information about the settlement, through and including hyperlinked access to this Agreement, the Long Form Notice, the Email Notice, the Postcard Notice, the Preliminary Approval Order, Class Counsel's motion for attorneys' fees, costs, and Service Award, and such other documents as Counsel together agree to post or that the Court orders posted on the Settlement Website. An additional description of the contemplated Settlement Website and its contents is provided in Section X, *infra*,

58. "Tompkins" or "Defendant" shall mean Tompkins Community Bank, its past and present parents, predecessors, successors, affiliated or acquired companies, holding companies (*i.e.*, Tompkins Financial), subsidiaries, partners, employees, agents, assigns, and board members.

59. "Tompkins' Counsel" or "Defendant's Counsel" refers collectively to Debra Bogo-Ernst of Willkie Farr & Gallagher LLP.

60. "*Mock* Litigation" shall mean the matter titled *Mock v. Tompkins Community Bank* that is currently pending before the United States District Court for the Northern District of New York as Case No. 3:22-cv-00995 (BKS/ML).

## III. SETTLEMENT CLASS CERTIFICATION

61. Tompkins disputes that any litigation class could be certified on the claims asserted in the Litigation. However, solely for purposes of avoiding the expense and inconvenience of further litigation, Tompkins does not oppose the certification of the Class for settlement purposes only. Preliminary certification of the Class for settlement purposes shall not be deemed a concession that certification of a litigation class is appropriate, nor would Tompkins be precluded from challenging class certification in further proceedings in the Litigation or in any other action if the Settlement Agreement is not finalized or finally approved. If the Settlement Agreement is not finally approved by the Court for any reason whatsoever, any certification of the Class will be void, and no doctrine of waiver, estoppel, or preclusion will be asserted against Tompkins in any litigated certification proceedings in the Litigation. No agreements made by or entered into by Tompkins in connection with the Settlement Agreement may be used by Plaintiff, Class Members, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Litigation, any other judicial proceeding or any non-judicial proceeding.

62. Subject to Court approval, and for settlement purposes only, the following Settlement Class shall be certified: "All current and former holders of a Tompkins Community Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred more than one Overdraft Fee or NSF Fees as the result of a checking account transaction being represented for payment."

63. If for any reason this settlement is not granted preliminary and final approval, or if this Agreement is terminated in accordance with its terms, the Parties, pleadings and proceedings will return to the status quo ante as if no settlement had been negotiated or entered into. Plaintiff shall file such motions and pleadings as are necessary to return this case to the Litigation posture that existed before this settlement was reached. Tompkins' agreement herein to certification of the Settlement Class as described in the Complaint or otherwise shall not be used for any purpose, including in resolving Plaintiff's motion for class certification in the Litigation or any request for certification in any other proceeding.

## IV. SETTLEMENT OF LITIGATION AND ALL CLAIMS AGAINST THE RELEASED PARTIES

64. Final approval of this Settlement Agreement will settle and resolve with finality, on behalf of Plaintiff and the Settlement Class Members, the Litigation and the Released Claims.

## V. ESTABLISHMENT OF SETTLEMENT FUND AND NET SETTLEMENT FUND

In consideration of a full, complete, and final settlement and dismissal of the Litigation with prejudice as set forth herein and of the Release provided in Section VII below, and, subject to Court approval as provided herein, the Parties agree to the following relief.

### (a) ESTABLISHMENT OF SETTLEMENT FUND

65. Within fourteen (14) business days after entry of the Preliminary Approval Order by the Court, the Settlement Amount of $450,000 (Four Hundred and Fifty Thousand Dollars less

any amounts already advanced by Tompkins for Administrative Expenses as per Paragraph 103 of this Agreement, shall be held by Tompkins in a separate internal account at Tompkins ("Tompkins Holding Account"), as the settlement fund ("Settlement Fund"). Tompkins shall transfer the Settlement Fund, less the total amount that will be credited to Settlement Class Members by Tompkins as provided in Paragraph 82(a) below, to the Escrow Account no later than ten (10) business days after the Effective Date ("Settlement Funding Deadline"). Notwithstanding anything in this Agreement to the contrary, Tompkins shall not be required to pay more than a total of $450,000 towards the Settlement Fund, inclusive of all attorneys' fees, costs, expenses, notice expenses, any Service Award, any other amounts ordered by the Court, and any and all Administrative Expenses. For the avoidance of doubt, Tompkins shall not bear any other fees, costs, charges, or expenses incurred by Plaintiff or Class Counsel, including but not limited to, those of any experts retained by Plaintiff or by Class Counsel.

66. The Settlement Fund shall be used for the following purposes:

a. payment and distribution of all Cash Awards (including, without limitation and for the avoidance of doubt, *de minimis* Cash Awards) to Settlement Class Members, pursuant to Section VI, *infra*;

b. payment of the Court-ordered Service Award to the Class Representative, pursuant to Section XVII, *infra*;

c. payment of any of Class Counsel's attorneys' fees, costs, and expenses, that are awarded by the Court, pursuant to Section XVII, *infra* (subject to Tompkins reserving its rights with respect to attorneys' fees that exceed one-third of the Settlement Amount);

d. payment of all costs, expenses, fees, and invoices associated with the Administrative Expenses, including but not limited to, all costs, expenses, and fees of the Settlement Administrator in performing any and all settlement administration, notice, or escrow related functions under this Agreement as well as Tompkins' Expert Expenses;

e. payment of all costs, expenses, fees, and taxes associated with establishing and maintaining the Settlement Fund as a Qualified Settlement Fund as set forth in Section XIX, or otherwise, including but not limited to any payments to any escrow agent providing services hereunder; and disposition of Residual Funds after the initial distribution of Cash Awards to Settlement Class Members pursuant to Section VI, Paragraphs 83 & 87 of this Agreement, including without limitation payment of the Administrative Expenses associated with such disposition of Residual Funds; and

f. additional fees, costs, and expenses not specifically enumerated in subparagraphs (a) through (e) above, subject to agreement and approval of Class Counsel and Tompkins' Counsel.

67. Notwithstanding the foregoing, any other award of attorneys' fees, Administrative Expenses, or any other fees, costs, expenses, or benefits otherwise awarded by the Court in connection with the Settlement Agreement shall be payable solely out of the Settlement Fund.

68. As more fully set forth below in Section XIX, after the Settlement Funding Deadline, the Settlement Fund payments provided by Tompkins to the Settlement Administrator will be maintained by the Settlement Administrator in an Escrow Account to be held as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 *et seq*. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and shall be deposited in an interest-bearing escrow account.

69. Provided that this Agreement is finally approved by the Court without material modification or amendment, the Net Settlement Fund (defined in Paragraph 72 of this Agreement) will be used to satisfy the Cash Award for Settlement Class Members in exchange for a release and covenants set forth in this Agreement, including, without limitation, a full, fair, and complete release of all the Released Parties from Released Claims, and dismissal of the Litigation with prejudice.

70. The Court may require changes to the method of allocation to Settlement Class Members without invalidating this Settlement Agreement, provided that the other material terms of the Settlement Agreement are not materially altered, including but not limited to the scope of the Release, the Class Period, and the amount of the Settlement Fund.

71. Tompkins' contribution to the Settlement Fund shall be fixed under this Section and be final. Tompkins shall have no obligation to make further payments into the Settlement Fund and shall have no financial responsibility or obligation relating to the settlement beyond establishing the Settlement Fund. If the Settlement Agreement is not finally approved, or is terminated in accordance with this Agreement, the Settlement Fund belongs to and shall be returned to Tompkins, less any Administrative Expenses paid to date.

**(b) NET SETTLEMENT FUND**

72. The net settlement fund ("Net Settlement Fund") is equal to the Settlement Fund plus any interest earned on that fund, less the following:

a. the amount of the Court-ordered Service Award to the Class Representatives;

b. the amount of any Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses;

c. the amount of any other Court-ordered award of fees in connection with the settlement;

d. the amount of all Administrative Expenses, including but not limited to, all costs, expenses, and fees of the Settlement Administrator in performing any and all settlement administration, notice, distribution, or escrow related functions hereunder as well as Tompkins' Expert Expenses;

e. the amount of all costs, expenses, fees, and taxes associated with establishing or maintaining the Settlement Fund as a Qualified Settlement Fund as set forth in Section XIX, or otherwise, including but not limited to any payments to any Escrow Agent providing services hereunder;

f. the amount of all Administrative Expenses associated with issuance of Cash Awards and/or disposition of Residual Funds after distribution of Cash Awards to Settlement Class Members;

g. and additional fees, costs, and expenses not specifically enumerated in subparagraphs (a) through (f) above, subject to agreement and approval of Class Counsel and Tompkins' Counsel.

## VI. PAYMENTS TO CLASS

Cash Awards shall be determined and calculated as set forth herein.

### (a) Cash Award Calculations

73. Tompkins shall retain an expert, with such expenses up to $25,000 to be paid from the Settlement Fund ("Tompkins' Expert Expenses"), to identify Class Members and implement the allocation of the Net Settlement Fund as provided in this Section of this Agreement (Section VI). The identification and allocation methodologies set forth in this Section VI shall be applied as consistently, sensibly, and conscientiously as reasonably practicable recognizing and taking into consideration the nature and completeness of the data and the purpose of the computation.

74. To identify Class Members, Tompkins' expert will examine Tompkins' data from the Class Period to identify Tompkins checking account customers who incurred Challenged Fees.

75. The following methodology shall be used by Tompkins' expert to calculate Cash Awards to Settlement Class Members who paid Challenged Fees: (i) to be credited to Settlement Class Members who are current accountholders; or (ii) paid by check to Settlement Class Members who are former accountholders ("Qualifying Settlement Class Members"):

a. Identify all Challenged Fees charged to Settlement Class Members ("Gross Fees");
b. Reduce the Gross Fees, on an individual Settlement Class Member basis, to account for any refunds or similar credits of Challenged Fees to those accountholders ("Net Fees");
c. Quantify each Settlement Class Member's relative proportion of the total Net Fees charged to the Settlement Class;
d. Determine whether: (i) a Cash Award is appropriate; and (ii) a *de minimis* Cash Award to a Settlement Class Member is necessary of $5 if the calculated Cash Award is too small for distribution to a Settlement Class Member so they will not qualify for a Cash Award; and

e. Determine Cash Award based on each Settlement Class Member's proportion of the Net Fees charged to the Settlement Class or determine if a *de minimis* Cash Award is appropriate, per Paragraph 75(d) *supra*.

76. After Tompkins' Cash Award calculations are complete, the Settlement Administrator shall update the Class List to reflect the corresponding Cash Award amounts for Settlement Class Members and provide the Redacted Class List to Class Counsel upon completion of the Cash Award calculations as described in Paragraph 75 above.

77. Plaintiff may retain an expert to review and approve Tompkins' expert's calculation of the Cash Awards. Plaintiff's expert will be paid from the Settlement Fund, subject to Court approval.

78. Tompkins and/or Tompkins' expert shall make available to Plaintiff's expert: (i) an anonymized list identifying Settlement Class Members and calculated Cash Awards ("Cash Award File"), and (ii) a file containing de-identified transactional data necessary for Plaintiff's expert to review and approve Tompkins' expert's calculations set forth in the Cash Award File ("Supporting Data File"). The Cash Award File and Supporting Data File shall be provided as soon as reasonably feasible after the deadline to opt out of the Settlement. For the avoidance of confusion, any Settlement Class Member for whom account data is provided under this Agreement shall be identified solely by reference to the random identifier number assigned to the Account. Plaintiff's expert shall then have twenty-one (21) days from receipt to review Tompkins' Cash Award File and Supporting Data File to assess whether the allocation methodology was performed and applied by Tompkins' expert in accordance with this Agreement ("Review Period"). In the event Plaintiff's expert raises any concerns, the Parties shall cooperate in good faith to resolve any concerns as expeditiously as possible. If the Parties cannot reach agreement, then the dispute shall be submitted to the Mediator for assisting the Parties with resolution. The Parties shall cooperate together to ensure that the Cash Awards are calculated in advance of final approval time and sufficiently in advance so as to permit payment in accordance with the time schedule set forth in Section VI(b), *infra*.

79. Upon expiration of the Review Period, and subject to resolution of any objections, the final allocation results shall be transmitted to the Settlement Administrator for purposes of effectuating payment of Cash Awards and for purposes of creating the confidential Class List. The Settlement Administrator shall prepare the Class List within five (5) business days of receipt of the final allocation results.

80. The confidential Class List shall be maintained by Tompkins and provided to the Settlement Administrator for the sole purpose of facilitating the notice and payments contemplated herein. The confidential Class List and identities of Settlement Class Members shall *not* be disclosed to anyone else, including Class Counsel, except that Tompkins shall disclose information about the identity of Settlement Class Members to the limited extent required for Class Counsel to provide necessary assistance in response to a question from a Settlement Class Member.

81. The Parties agree the foregoing methodologies are exclusively for purposes of computing retrospectively, in a reasonable and efficient fashion, Cash Awards. The fact that the

methodologies are used herein is not intended and shall not be used for any other purpose or objective whatsoever.

**(b) <u>Distribution of Cash Awards & Residual Funds</u>**

82. Within forty-five (45) days of the Effective Date and subject to applicable tax reporting or withholding requirements, every Settlement Class Member shall be paid as follows:

a. For Settlement Class Members who are current accountholders, Tompkins shall credit the Cash Award payments to the Settlement Class Members' accounts, using funds within the Tompkins Holding Account defined in Paragraph 65 *supra*.

b. For Settlement Class Members who are former accountholders, the Settlement Administrator shall cause a check from the Net Settlement Fund to be mailed to the former accountholder's last known mail address (as updated by the Settlement Administrator).

c. Checks shall be made payable to the accountholder, and where applicable, jointly to the joint accountholders during the Class Period. Cash Award checks shall be mailed to the mail addresses of record used for Class Notice purposes, or such other mail addresses as the Settlement Administrator identifies as valid Settlement Class Member mail addresses through the Notice Program. The Settlement Administrator will make reasonable efforts to locate the proper mail address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated mail address.

d. Checks shall be valid for one hundred and twenty (120) days from the date of the check and the check shall state that it is invalid after one hundred and twenty (120) days of issuance. If any Settlement Class Member fails to negotiate their check within that time period, such Settlement Class Member shall forever waive his/her claim for payment hereunder. In the event that checks sent to Settlement Class Members are not cashed within one hundred and twenty (120) days of their initial mailing date, whether because the checks were not received or otherwise, those checks will become null and void as provided for herein.

83. If it is administratively feasible to do so, unclaimed Residual Funds in the Settlement Fund held in the Escrow Account shall be used to make a second distribution, on a pro rata basis, to all Settlement Class Members who received an account credit or cashed a Settlement Award check ("Second Cash Award Distribution"). The Parties will confer as to whether a Second Cash Award Distribution is administratively feasible, with input from the Settlement Administrator. If the Parties dispute whether there should be a Second Cash Award Distribution, they will jointly ask the Mediator to assist with resolution of the issue. In the event that any redistributed checks are not cashed within one hundred and twenty (120) days of their mailing date, whether because the checks were not received or otherwise, those checks will become null and void.

84. Cash Awards shall be distributed and paid solely from the Net Settlement Fund. If this Settlement Agreement is not approved, or for any reason the Effective Date does not occur,

no Cash Award payments or distribution of any kind shall be made to Settlement Class Members under this Agreement.

85. The Parties make no representation regarding the tax treatment of Cash Awards received by Settlement Class Members. The Parties will defer to the Settlement Administrator's recommendation regarding when Settlement Class Members must provide a W-9 form and/or a Taxpayer Identification or Social Security Number, as may be required by applicable Internal Revenue Service reporting requirements. Class Counsel and Plaintiff shall timely furnish to the Settlement Administrator any required tax information or forms before any payments are made to them from the Settlement Fund.

86. The Parties agree that the Settlement Administrator has permission to seek reasonable documentation before distributing settlement funds to an estate.

**(c) *Cy Pres* Distribution**

87. Any funds in the Net Settlement Fund following a Second Cash Award Distribution, or any Residual Funds in the Net Settlement Fund held in the Escrow Account if a Second Cash Award Distribution is not feasible ("*Cy Pres* Funds"), shall be paid through *cy pres* to non-profit charities that assist low-income consumers and/or provide consumer financial education in the geographic area of the Settlement Class Members, subject to Court approval. The Parties shall confer in good faith about appropriate *cy pres* beneficiaries after the stale date on checks to Settlement Class Members passes, and shall each propose beneficiaries for Court approval. Plaintiff will propose a beneficiary for 50% of the *Cy Pres* Funds, subject to approval by Defendant. Defendant will propose a beneficiary for 50% of the *Cy Pres* Funds, subject to approval by Plaintiff.

88. The Court may revise this *cy pres* provision as necessary without terminating or otherwise impacting this settlement, provided the Court's revision does not increase the amount that Defendant would otherwise pay under this Agreement.

## VII. RELEASE

89. In addition to the effect of any final judgment entered by the Court in accordance with this Agreement, upon the Effective Date, and for other valuable consideration as described herein, the Released Parties shall be completely released, acquitted, and forever discharged from any and all Released Claims ("Class Release").

90. As of the Effective Date, and with the approval of the Court, Plaintiff and each Settlement Class Member, as well as their respective, heirs, assigns, executors, administrators, beneficiaries, successors, and agents, hereby release, resolve, relinquish, and discharge each and all of the Released Parties from each of the Released Claims (as defined below). The Settlement Class Members further agree that they will not institute any action or cause of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal, or local government agency or with any administrative or advisory body, arising from the Released Claims. The release does not apply to members of the Class who timely opt-out of the settlement.

91. "Released Claims" means any and all claims, demands, damages, costs, attorneys' fees, disputes, liabilities, actions, rights, suits or causes of action, losses or remedies of any kind or nature whatsoever, against Released Parties, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or any legal or equitable theory, right of action or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of, or relate to, or are based upon or in any manner related or connected with: (i) any Challenged Fee charged by Tompkins in connection with a personal or business checking account, regardless of the state of residence or citizenship of the accountholder; (ii) a claim that Tompkins assessed a Challenged Fee on any Tompkins personal or business checking account transaction based on re-presentment of a checking account transaction; (iii) any claim related to the assessment of Challenged Fees that was, or could be, asserted in connection with the Litigation including, but not limited to, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, unjust enrichment, and/or the New York General Business Law § 349 *et seq.*; and (iv) any alleged failure to adequately or clearly disclose Tompkins practices and policies related to assessment of the Challenged Fees. Such release applies regardless of how such claims are pled. This Agreement does not imply that any such claims exist or are valid.

92. Provided that the Plaintiff has been paid a Service Award, in such amount as the Court approves and consistent with the terms of this Agreement, and without in any way limiting the generality of the foregoing release, and in addition to the Release provided by Plaintiff in Paragraph 91 as to the Released Claims, Plaintiff, as well as her respective heirs, assigns, executors, administrators, beneficiaries, successors, and agents, hereby releases, resolves, relinquishes, and discharges each and all of the Released Parties from any and all claims, demands, damages, costs, attorneys' fees, disputes, liabilities, actions, rights, suits or causes of action, and losses or remedies of any kind or nature whatsoever related to Mock's checking account that Plaintiff may have, whether on her own behalf and on behalf of her heirs, assigns, executors, administrators, beneficiaries, successors and agents, and whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or any legal or equitable theory, right of action or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the Execution Date, against the Released Parties.

93. Plaintiff or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of this Section VII, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, and contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Section VII. Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the releases

contained in this Section VII, and that all of their claims in the Litigation shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the settlement or never receives a distribution of Cash Award or other funds from the settlement.

94. Without limiting the foregoing, the Released Claims specifically extend to claims that Plaintiff and Settlement Class Members do not know or suspect to exist in their favor at the time that the settlement and the releases contained therein become effective. Each Releasor hereby further waives and releases California Civil Code Section 1542 and similar provisions in other states, to the extent applicable. Each Releasor hereby certifies that he, she, or it is aware of and has read and reviewed the following provision of California Civil Code Section 1542 ("Section 1542"):

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

95. The provisions of the Class Release shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction.

96. Each Releasor waives any and all defenses, rights, and benefits that may be derived from the provisions of applicable law in any jurisdiction that, absent such waiver, may limit the extent or effect of the release contained in this Agreement.

97. The Parties and each member of the proposed Settlement Class agree that the amounts to be paid under this Settlement Agreement to each Settlement Class Member represent the satisfaction of that Settlement Class Member's claims for the Released Claims. No portion of such settlement represents the payment of punitive or exemplary damages. In consideration for the satisfaction of each Settlement Class Member's claim for compensatory damages, claims for punitive or exemplary damages arising from the Released Claims shall be released. Without limiting the foregoing, Plaintiff agrees and covenants, and each Settlement Class Member shall be deemed to have agreed and covenanted, not to sue any Released Party with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity or any other forum. In addition, Plaintiff and each Settlement Class Member are hereby enjoined from asserting as a defense, including as a set-off or for any other purpose, any argument that if raised as an independent claim would be a Released Claim.

## VIII. PRELIMINARY APPROVAL AND SETTLEMENT CLASS CERTIFICATION

98. This settlement shall be subject to approval of the Court. As set forth in this Agreement, Tompkins shall have the right to withdraw from the settlement and the Settlement

Agreement if the Court does not issue the Preliminary Approval Order or the Final Approval Order or if the Class is not certified for settlement purposes or as otherwise permitted under this Agreement.

99. Within no later than fourteen (14) days following execution of this Agreement by all Parties, Plaintiff through Class Counsel shall submit to the Court a motion (the "Preliminary Approval Motion"), consistent with the terms of this Agreement: (a) for certification of the Settlement Class; and (b) for preliminary approval of the Agreement, and authorization to disseminate notice of class certification and settlement contemplated by this Settlement Agreement to all potential Class Members. Consistent with the terms of this Agreement, the Preliminary Approval Motion shall apply for entry of the Preliminary Approval Order in the form attached hereto Exhibit 1. The Preliminary Approval Motion shall also request that Plaintiff be appointed as class representatives for the Class and that Class Counsel be appointed as counsel for the Class.

The Preliminary Approval Order shall contain such provisions as set forth in Exhibit 1 including provisions:

a. preliminarily certifying the Class for settlement purposes only;

b. preliminarily approving this settlement and finding this settlement sufficiently fair, reasonable, and adequate to allow Notice to be disseminated to the Class;

c. approving the form, content and manner of Settlement Class Notice;

d. appointing KCC Class Action Services LLC as the Settlement Administrator;

e. setting a schedule for proceedings with respect to final approval of this settlement, including scheduling a Final Approval hearing for no earlier than 120 days from the date of the Preliminary Approval Order;

f. providing that, pending entry of a Final Approval Order and Judgment, no member of the Settlement Class (either directly or in any representative or other capacity) shall commence or continue any action against Defendant or any of the Released Parties asserting any of the Released Claims;

g. staying the Litigation, other than such proceedings as are related to this settlement; and

h. providing that no admissions have been made by Tompkins.

## IX. <u>SETTLEMENT ADMINISTRATOR</u>

100. Class Counsel and Tompkins' Counsel have jointly selected and retained KCC Class Action Services LLC to serve as the Settlement Administrator. The Settlement Administrator shall administer various aspects of the settlement as described in Paragraph 101 of this Agreement, and perform such other functions as are specified for the Settlement Administrator elsewhere in this Settlement Agreement including, but not limited to, establishing

the Settlement Fund, providing mailed notice or other required notices to Class Members, distributing settlement funds as provided herein, and returning the Settlement Fund to Tompkins in the event of termination of this Agreement, as set forth in Section XVI of this Agreement.

101. The duties of the Settlement Administrator, in addition to other responsibilities that are described elsewhere in this Agreement, include:

a. obtaining from Tompkins' Counsel the names, last known email addresses, and last known mail addresses for the Class Members in the Notice Database; verifying and updating the mail addresses so received through the National Change of Address database; and completing Class Notice as provided in Section X of this Agreement;

b. establishing and maintaining a Post Office box for Opt-Out requests as set forth in Section XI of this Agreement, as well as for correspondence from Class Members;

c. establishing and maintaining a Settlement Website that will contain and make available to Class Members certain information regarding the Litigation and the settlement through that website;

d. responding to any mailed Class Member inquiries;

e. processing all requests for exclusion from Class Members;

f. providing to Counsel written monthly reports, and a written final report no later than five (5) business days after the end of the Opt-Out Deadline, that lists all timely and valid Opt-Outs from the Settlement, and other pertinent information;

g. interfacing with any escrow agents who may assist with the Qualified Settlement Fund (if different from the Settlement Administrator);

h. preparing and providing to Tompkins' Counsel the confidential Class List and the Redacted Class List to Class Counsel;

i. at Class Counsel and/or Tompkins' Counsel request in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Class Member who timely and properly requested exclusion from the Settlement Class and that confirms that the Notice Program as set forth in this Agreement was completed in a timely manner;

j. processing and transmitting Cash Award checks from the Net Settlement Fund to the Settlement Class Members who are former accountholders in accordance with the terms of this Agreement;

k. providing its recommendation concerning whether sufficient Residual Funds remain in the Net Settlement Fund for a Second Cash Award Distribution (defined *supra*) to Qualifying Settlement Class Members, as set forth in Paragraph 83 of

this Agreement, and providing a report and/or affidavit of such pertinent information to Counsel;

l. if sufficient funds remain, processing and transmitting a Second Cash Award Distribution to Qualifying Settlement Class Members and providing a report and/or affidavit of such pertinent information to Counsel;

m. qualifying under, and agreeing to comply with, all applicable confidentiality, privacy, and security protocols required by Tompkins;

n. providing, at the direction and on behalf of Tompkins, such notice(s) of the settlement as may be required in accordance with the timing and notice requirements of the Class Action Fairness Act;

o. establishing an escrow account and maintaining the Settlement Fund therein as a Qualified Settlement Fund and performing such duties and functions as associated therewith, including without limitation the duties and functions set forth in Section XIX *infra,* or elsewhere in this Agreement; and

p. performing any other tasks reasonably required to effectuate the settlement.

102. In the event of termination as provided in Section XVI of this Agreement, the Settlement Administrator shall return the Settlement Fund to Tompkins within seven days of termination, less any money that the Settlement Fund has already paid, or incurred an obligation to pay, in accordance with the terms of this Agreement for Administrative Expenses. Plaintiff shall have no financial responsibility for any Administrative Expenses paid out of the Settlement Fund in the event that the Settlement Agreement is not finally approved or terminated.

## X. NOTICE TO PROPOSED CLASS MEMBERS

### (a) Payment of Administrative Expenses Relating to Notice

103. Tompkins shall pay the reasonable Administrative Expenses incurred prior to the creation of the Settlement Fund, and Tompkins will be given credit for all such payments which shall be deducted from the Settlement Fund as set forth below. The Settlement Administrator shall provide the Parties with an estimate of the initial Administrative Expenses, *e.g.,* costs of sending Postcard Notice, establishing the Settlement Website, etc. ("Initial Administrative Expenses"). Tompkins shall pay the estimated Initial Administrative Expenses to the Settlement Administrator within ten (10) business days after the entry of the Preliminary Approval Order. After that upfront payment of Initial Administration Expenses by Tompkins, the Settlement Administrator shall bill Tompkins monthly for any reasonable additional Administrative Expenses, until such time as the Settlement Fund is established. Any amounts paid by Tompkins for the estimated costs of administration which are not incurred by the Settlement Administrator shall be used for other Administrative Expenses, or shall be deducted from future billings by the Settlement Administrator. The Settlement Administrator estimates that Initial Administrative Expenses will be $35,055, and Administrative Expenses overall shall be $49,882.

104. The Settlement Administrator shall maintain detailed records of the Administrative Expenses and shall provide those to Counsel monthly. At such time that Tompkins funds the Settlement Fund, all amounts previously paid to the Settlement Administrator by Tompkins shall be deducted from the total payment which it is required to pay to create the Settlement Fund under Section V. After Tompkins has created the Settlement Fund, Tompkins shall have no further obligation to pay any amount under this Settlement Agreement, and any additional Administrative Expenses shall be paid out of the Settlement Fund.

**(b) <u>Form of Notice</u>**

105. In the event the Court enters the Preliminary Approval Order, Notice shall be provided to Class Members via email, mail and/or website, as provided herein:

a. For Class Members who have provided their email address to Tompkins, the Settlement Administrator will provide Email Notice substantially in the Form shown in Exhibit 4, subject to approval by the Court, to the most recent email address provided by the customer to Tompkins.

b. For Class Members who have not provided an email address or, if the Email Notice is not successfully delivered (as shown by an undeliverable message back to the Settlement Administrator), the Settlement Administrator will provide Postcard Notice substantially in the form shown in Exhibit 3, subject to approval by the Court.

c. Notice of the settlement (substantially in the form of Exhibit 5, the Long Form Notice) shall also be posted by the Settlement Administrator on the Settlement Website by the Notice Deadline. The Settlement Administrator shall establish and administer the Settlement Website, which website shall contain information about the settlement, including electronic copies of Exhibits 3 and 4 (or any forms of these notices that are approved by the Court), this Settlement Agreement, and all court documents related to the settlement or otherwise agreed to by Counsel. The URL of the Settlement Website shall be www.Mockfeesettlement.com or such other URL as Counsel may subsequently agree upon in writing, provided the URL shall not include the name "Tompkins," "Tompkins Financial," "Tompkins Bank," or "Tompkins Community Bank". The Settlement Website shall not include any advertising and shall not bear or include the Tompkins Community Bank logo or Tompkins' trademarks. Ownership of the Settlement Website URL shall be transferred to Tompkins within 10 days of the date on which operation of the Settlement Website ceases. The Settlement Website shall remain operational until sixty days past the stale date of any check mailed to Settlement Class Members. Other than the Settlement Website, there shall be no publication notice (except as Tompkins or its affiliates may be required or advised to make under applicable law), and there shall be no press release or other public communication by or on behalf of Plaintiff and/or Class Counsel.

106. The Notice shall be used for the purpose of informing proposed Class Members, prior to the Final Approval Hearing, that there is a pending settlement, and to further (i) inform

Class Members as to how they may obtain a copy of the Settlement Agreement; (ii) protect their rights regarding the settlement; (iii) request exclusion from the Settlement Class and the proposed settlement, if desired; (iv) object to any aspect of the proposed settlement, if desired; and (v) participate in the Final Approval Hearing, if desired. The Notice shall make clear the binding effect of the settlement on all Class Members who do not timely request exclusion from the Settlement Class.

107. **Email Notice & Postcard Notice**. Email Notice and Postcard Notice will be provided by the Settlement Administrator, as follows:

a. To facilitate the provision of Email Notice and Postcard Notice, Tompkins will provide to the Settlement Administrator, within ten (10) business days of entry of the Preliminary Approval Order, in an electronically searchable and readable format, a Notice Database containing data sufficient to identify, to the extent reasonably available in Tompkins' records, each Class Member's name and last known email address and last known mail address. Tompkins is obligated to provide only such information as is contained and reasonably available in its computerized account records for the applicable Class Period. The Settlement Administrator will prepare and provide a De-Identified Notice Database to Class Counsel.

b. Any personal information relating to members of the Class that is provided to the Settlement Administrator pursuant to this Settlement Agreement shall be provided solely for the purpose of providing Settlement Class Notice to members of the Class and allowing them to recover under this settlement. Such information shall be kept in strict confidence, shall be used only for purposes of this settlement, and shall not be disclosed to any third party.

c. Prior to mailing the Postcard Notice, the Settlement Administrator shall run the last known mail addresses for Class Members (as contained in the Notice Database) through the United States Postal Services' National Change of Address Database, and shall update the mail addresses accordingly for mailing and other settlement administration purposes in the Notice Database. Once this process is complete, the Settlement Administrator shall cause individual Postcard Notice (substantially in the form of Exhibit 3) to be sent by the Notice Deadline (as defined in Paragraph 112 of this Agreement), through U.S. Mail to potential Class Members ("Initial Postcard Notices").

d. The Settlement Administrator shall cause Email Notice (substantially in the form of Exhibit 4) to be sent to the last known email address in Tompkins' records by the Notice Deadline (as defined in Paragraph 112 of this Agreement).

e. For all Initial Postcard Notices that are returned undeliverable and without a forwarding mail address and for Email Notices that are not successfully delivered, the Settlement Administrator shall perform reasonable address traces. No later than 15 days after the Notice Deadline in Paragraph 112 of this Agreement, the Settlement Administrator shall mail Postcard Notices to those Class Members: (i)

whose new mail addresses were identified as of that time through address traces; (ii) whose initial emails were not successfully delivered and the Settlement Administrator located a mail address; or (iii) for whom there was a forwarding mail address ("Notice Remailing Process"). Except as set forth herein, there shall be no further obligation or attempt to obtain a forwarding mail address for any such returned mail or to further re-mail any such Postcard Notices or returned mail after this Notice Remailing Process is complete.

f. Within seven days after the Objection Deadline, the Settlement Administrator shall provide Class Counsel and Tompkins' Counsel with an affidavit that confirms that the Notice Program as set forth in this Agreement was completed in a timely manner, reports the details of returned and undeliverable notices, and reports any objections or Opt Outs received by the Settlement Administrator.

g. Within seven days after the date the Settlement Administrator completes the later of the Email Notice and the Notice Remailing Process, the Settlement Administrator shall provide Tompkins' counsel with an updated Notice Database reflecting any new email address information.

108. Class Counsel shall file the affidavits of completion that it receives from the Settlement Administrator pursuant to Paragraph 107(e), *supra*, with the Court as exhibits to or in conjunction with Plaintiff's motion for Final Approval of the Settlement.

109. CAFA Notice. At the request, expense, and direction of Tompkins, the Settlement Administrator shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within ten (10) days of the filing of the Preliminary Approval Motion. It is Tompkins' obligation to ensure that notice required by 28 U.S.C. § 1715 is timely provided to the appropriate recipients.

110. Before Class Notice is commenced, Counsel for the Parties shall first be provided with proof copies of the final form of the Class Notices and shall have the right to inspect and approve the same for compliance with the Settlement Agreement and with the Court's orders.

111. The Parties agree that compliance with the procedures described in this Section X is the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency the Litigation, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval Hearing, and shall satisfy the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable rule or regulation.

**(c) Notice Deadline**

112. Both the Email Notice and the Initial Postcard Notices shall be sent directly to all identified potential Class Members as soon as reasonably practicable following transmission of the Notice Database to the Settlement Administrator and no later than forty-five (45) days after the date that the Court enters the Preliminary Approval Order, or such other date that the Court may set ("Notice Deadline").

## XI. OPT-OUTS

113. **Opt-Out Period.** Class Members will have up to and including approximately forty-five (45) days following the Notice Deadline to opt out of the settlement in accordance with this Section (the "**Opt-Out Deadline**"). If the settlement is finally approved by the Court, all Settlement Class Members who have not opted out by the Opt-Out Deadline will be bound by the Settlement Agreement and the Class Release, and the relief provided by the settlement will be their sole and exclusive remedy for the claims alleged by the Settlement Class.

114. **Opt-Out Process**

a. Any Class Member who wishes to be excluded from the Settlement Class must provide a written request for exclusion to the Settlement Administrator, known as an "Opt-Out." The Opt-Out must be mailed, by first class mail, postage prepaid, and postmarked and addressed to the address of the Settlement Administrator indicated in the Notice on or before the Opt-Out Deadline. The Settlement Administrator will provide Counsel for the Parties copies of each request for exclusion it receives.

b. In order to be valid, the Opt-Out must be in writing and include: (i) the Class Member's name, address, telephone number, and the last four digits of the account number; (ii) the name and/or number of this Litigation; and (iii) a statement that the Class Member wishes to be excluded from the Settlement Class. An Opt-Out must be signed by the Class Member. An Opt-Out request that does not contain the required information, is not signed, or is not postmarked by the Opt-Out Deadline, shall be invalid and the person serving such a request shall be considered a member of the Settlement Class and shall be bound by the settlement, if approved.

c. Except as provided in this Section XI, no Class Member may purport to exercise any exclusion rights of any other person, or purport to exclude other persons as a group, aggregate, or class involving more than one person, or as an agent or representative. Any such purported exclusion shall be invalid and any Class Member that does not submit an opt-out request on his or her own behalf shall be a Settlement Class Member and be bound as a Settlement Class Member for all purposes. If an accountholder for any joint account submits a valid-opt out request, the request will be effective for all accountholders or signatories to such account.

d. A list reflecting all timely and valid Opt-Outs shall also be filed with the Court at the time of the motion for final approval of the settlement.

## XII. OBJECTIONS

115. Class Members who have not validly opted-out of the settlement in accordance with its terms may object to this Agreement up to and including the date set by the Court in the Preliminary Approval Order, which shall be approximately forty-five (45) days following the Notice Deadline ("Objection Deadline").

116. The Parties will request that the Court order that any Class Member who has any objection to certification of the Settlement Class, to approval of this Settlement Agreement or any of its terms, or to the approval process must send his, her or its objection to the Settlement Administrator providing the following elements ("Required Objection Elements"):

a. the case name and case number(s) of this Litigation;

b. the objector's full name, current address, and the last four digits of the account number of any Tompkins account the objector claims was charged Challenged Fees in this Litigation;

c. a statement that the Settlement Class Member objects to the Settlement, in whole or in part;

d. the reasons why the objector objects to the settlement along with any supporting materials;

e. the identity of any lawyer who assisted, provided advice, or represents the objecting Class Member as to this case or such objection, if any;

f. the objector's signature; and

g. a statement indicating whether the objecting Settlement Class Member intends on appearing at the Final Approval Hearing either *pro se* or through counsel and whether the objecting Settlement Class Member plans on offering testimony at the Final Approval Hearing.

117. The Parties will request that the Court set the Objection Deadline approximately forty-five (45) days after the Notice Deadline. The Parties will request that the Court order that failure to comply timely and fully with these procedures shall result in the invalidity and rejection of an objection. The Parties will request that the Court order that no Class Member shall be entitled to object to certification of the Class or to the Settlement Agreement, and no written objections or briefs submitted by any Class Member shall be received or considered by the Court at the Final Approval Hearing, unless the Class Member provides written notice with the Required Objection Elements no later than the Objection Deadline.

118. The Parties will request that the Court order that no Class Member shall be entitled to appear at the Final Approval Hearing unless the Class Member states in his or her objection that he or she intends to appear at the Final Approval Hearing either personally or through counsel.

119. The Parties will request that the Court order that Class Members who fail to file and serve timely written objections in accordance with this Section shall be deemed to have waived any objections and shall be foreclosed from making any objection to the certification of the Settlement Class or to the Settlement Agreement.

## XIII. FINAL APPROVAL HEARING

120. The Parties will request that the Court hold a Final Approval Hearing. The date for the Final Approval Hearing shall be set for approximately one hundred twenty (120) days after entry of the Preliminary Approval Order, or at such other later time as complies with all applicable timing requirements under CAFA and as the Court determines.

121. At the Final Approval Hearing, the Parties will request that the Court consider whether the Class should be certified pursuant to Federal Rule of Civil Procedure 23 for settlement, and, if so: (i) consider and rule on any properly filed objections to the Settlement Agreement; (ii) determine whether the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith; and (iii) enter the Final Approval Order and Judgment, including final approval of the Settlement Class and the Settlement Agreement and any award of attorneys' fees and expenses and Service Awards.

## XIV. FINAL APPROVAL ORDER AND JUDGMENT

122. If the settlement is approved preliminarily by the Court, and all other conditions precedent to the settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing, the Parties shall jointly seek entry of a Final Approval Order. Class Counsel shall file a memorandum of points and authorities in support of the motion for Final Approval of the Class Settlement. Class Counsel and/or Tompkins may file a memorandum addressing any Objections submitted to the settlement. The dismissal orders, motions, or stipulation to implement this Section shall, among other things, seek or provide for a dismissal with prejudice and waive any rights of appeal. The motion for entry of a Final Approval Order will include a declaration from the Settlement Administrator stating that the Notice required by the Agreement has been completed in accordance with the terms of the Court's Preliminary Approval Order.

123. The Parties shall jointly submit to the Court a proposed Final Approval Order and Judgment, in the form attached hereto as Exhibit 2, that, without limitation, approves the settlement and certifies the Settlement Class pursuant to Federal Rule Civil Procedure 23 and:

a. finds that this Agreement is fair, reasonable, and adequate and was entered into in good faith and without collusion, and approves and directs consummation of this Agreement according to its terms;

b. finds that the Class Notice provided satisfied the requirements of due process and of Federal Rules of Civil Procedure Rule 23(e)(1);

c. approves the Class Release provided in Section VII and finds that, as of the Effective Date, the Settlement Class Members will each be bound by this Agreement, including the Release and Covenant not to sue set forth in Section VII;

d. dismisses, on the merits and with prejudice, all Released Claims of Plaintiff and of the Settlement Class Members against Tompkins in the Litigation, without costs and fees except as ordered by the Court;

e. permanently enjoins each and every Settlement Class Member from bringing, joining, or continuing to prosecute any Released Claim, or from asserting as a defense, including as a set-off or for any other purpose, any argument that if raised as an independent claim would be a Released Claim, against Tompkins or any of the Released Parties;

f. reserves continuing and exclusive jurisdiction over the settlement and this Agreement, including but not limited to the Litigation, the settlement, the Settlement Class Members, and Tompkins, for the purposes of administering, consummating, supervising, construing, and enforcing the Settlement Agreement and the Settlement Fund; and

g. finds that, pursuant to Federal Rule Civil Procedure 54(b), there is no just reason for delay of entry of Final Judgment with respect to the foregoing.

124. This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order that grants final approval of this Agreement and enters a Final Judgment as set forth in this Agreement. Class Counsel shall use their best efforts to assist Tompkins in obtaining dismissal with prejudice of the Litigation accordingly and take all steps necessary and appropriate to otherwise effectuate all aspects of this Agreement.

## XV. FINAL ORDER

125. As part of the Final Approval Order and Judgment, the Court's order shall operate to permanently enjoin any and all pending or future claims by Settlement Class Members against the Released Parties raising or arising out of any Released Claim.

126. The Court's Final Approval Order and Judgment shall enjoin and forever bar any and all Settlement Class Members from commencing and/or maintaining any action, legal or otherwise, against the Released Parties raising or arising out of any Released Claim.

127. This provision is not intended to prevent or impede the entitlement to Cash Awards under this Settlement Agreement.

## XVI. TERMINATION OF THE SETTLEMENT

128. Plaintiff and Tompkins shall have the right to unilaterally terminate this Agreement by providing written notice of its election to do so ("Termination Notice") to each other hereto within ten (10) calendar days of any of the following occurrences:

a. the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement Agreement;

b. an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated without material change by the Court on remand;

c. any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order and Judgment, or the Settlement Agreement in a way that is material, unless such modification or amendment is accepted in writing by all Parties;

d. notification from the Settlement Administrator that more than one percent (1%) or 500 of the Class Members Opt-Out, whichever is less;

e. the Effective Date does not occur; or

f. any other ground for termination provided for elsewhere in this Agreement occurs.

129. In the event the Settlement Agreement is not approved or does not become final, or is terminated consistent with this Settlement Agreement, the Parties, pleadings, and proceedings will return to the *status quo ante* as if no settlement had been negotiated or entered into, and the Parties will negotiate in good faith to establish a new schedule for the Litigation. In such event, the Parties' rights and defenses will be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with this Agreement will be vacated.

130. In the event of a termination as provided for herein or elsewhere in this Agreement, the Settlement Administrator shall return the Settlement Fund to Tompkins within seven days of termination, less any money that the Settlement Fund has already paid or incurred an obligation to pay in accordance with the terms of this Agreement for Administrative Expenses.

## XVII. ATTORNEYS' FEES AND SERVICE AWARD

131. Class Counsel shall file any petition to the Court for an award of attorneys' fees and costs from the Settlement Fund at least fifteen (15) days prior to the Objection Deadline. Tompkins will take no position on a request for attorneys' fees that is one-third or less of the Settlement Amount, but Tompkins reserves the right to object to any request for attorneys' fees that exceeds one-third of the Settlement Amount. Tompkins also agrees to take no position on a request for reimbursement of Counsel's reasonably incurred expenses.

132. In no event will Tompkins have any financial responsibility or liability whatsoever for attorneys' fees, expenses, or costs beyond its obligation to establish the Settlement Fund, as set forth in this Agreement. In particular and without limiting the foregoing, Tompkins shall have no financial responsibility or liability for attorneys' fees and costs sought by any member of the Class or by any counsel representing or working on behalf of one or more Class Members or the Settlement Class, and no obligation for allocation of fees and costs among Class Counsel or attorneys representing or working on behalf of Class Members.

133. At the same time Class Counsel seeks approval of their attorneys' fees and costs, Class Counsel shall petition the Court for a Service Award for the Class Representatives in an amount not to exceed $5,000. The Service Award shall be paid solely from the Settlement Fund and no interest shall accrue or otherwise be due or payable in connection with any such award. The Service Award shall be paid to Plaintiff in addition to any Cash Award, and Plaintiff shall be entitled to any Cash Award. The Parties warrant that they commenced negotiations on the proposed Service Award only after they reached agreement on all other material terms of this Settlement Agreement.

134. The payments of attorneys' fees, costs, and a Service Award set forth in Paragraphs 131 and 133 above are subject to and dependent upon the Court's approval of the settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class. However, this settlement is not dependent or conditioned upon the Court approving Plaintiff's and/or Class Counsel's request for such payments or awarding the particular amounts sought by Plaintiff and/or Class Counsel. In the event the Court declines Plaintiff's and/or Class Counsel's requests or awards less than the amounts sought, this settlement, including but not limited to the Releases provided herein, shall continue to be effective and enforceable by the Parties.

## XVIII. <u>REPRESENTATIONS</u>

135. The Parties agree that the Settlement Agreement provides fair, equitable, and just compensation, and a fair, equitable, and just process for determining eligibility for compensation for any given Settlement Class Member related to the Released Claims.

136. The Parties shall use their best efforts to conclude the settlement and obtain the Final Approval Order and Judgment, including affirmatively supporting the settlement in the event of an appeal or an objection.

137. The Parties specifically acknowledge, agree, and admit that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any other equivalent or similar rule of evidence of any state, and shall not: (a) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party; or (b) be used to establish a waiver by Tompkins of any defense or right, or to establish or contest jurisdiction or venue in other litigation. Notwithstanding the foregoing, any Party shall be entitled to use this Settlement Agreement and its Exhibits in connection with enforcement of the obligations and waivers set forth herein and for all other purposes set forth below at Paragraph 140.

138. In consideration of the agreements made herein, Class Counsel hereby warrant and represent to Tompkins that as of the execution date of this Agreement: (a) Class Counsel are not aware that any current clients have claims against Tompkins similar to the claims alleged in the Litigation; and (b) Class Counsel are not actively soliciting clients to bring cases specifically against Tompkins for violations similar to those alleged in the Litigation.

139. The Parties also agree that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders, or other documents entered in furtherance of this Settlement Agreement, and any acts in the performance of this Settlement Agreement are not intended to establish grounds for certification of any class involving any Class Member other than for certification of the Class for settlement purposes.

140. The provisions of this Settlement Agreement, and any orders, pleadings, or other documents entered in furtherance of this Settlement Agreement, may be offered or received in evidence solely: (i) to enforce the terms and provisions hereof or thereof; (ii) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a Party hereto; (iii) in order to establish payment, or an affirmative defense of preclusion or bar in a subsequent case; (iv) in connection with any motion to enjoin, stay or dismiss any other action; or (v) to obtain Court approval of the Settlement Agreement.

141. Subject to settlement notice process set forth in Section X, the Parties agree that they will not initiate any publicity of the settlement and will not respond to requests by any media (whether print, online, or any traditional or non-traditional form), except to say "no comment" and direct any inquiries to the information on the settlement website about the settlement. Notice of the settlement will be delivered exclusively through the notice process set forth in Section X above. Nothing in this provision shall be interpreted to limit representations that the Parties or their attorneys may make to the Court to assist it in its evaluation of the proposed settlement, nor shall this provision prohibit Class Counsel from having communications about the settlement directly with the Settlement Administrator or with Class Members.

142. This Agreement shall be deemed executed as of the date that the last Party signatory signs the Agreement. This Agreement and the Exhibits hereto constitute the entire agreement between the Parties and shall fully supersede any previous agreement entered into by the Parties and represent the full and final agreement between the Parties.

143. The Parties agree to request that the Court approve the forms of the Preliminary Approval Order attached hereto as Exhibit 1, the Final Approval Order and Judgment attached as Exhibit 2, the Postcard Notice attached as Exhibit 3, the Email Notice attached as Exhibit 4, and the Long Form Notice attached as Exhibit 5. The fact that the Court may require non-substantive changes to any of these documents does not invalidate this Settlement Agreement.

## XIX. TAXES

144. **Qualified Settlement Fund.** The Parties agree that the escrow account into which the Settlement Fund is deposited, following the Settlement Funding Deadline, is intended to be and will at all times constitute a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B 1 ("Qualified Settlement Fund'). The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of Section VI. It shall be the responsibility of the Settlement Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

145. **The Settlement Administrator is "Administrator."** For the purpose of §1.468B of the Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund. The Settlement Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B 2(k)). Such returns shall reflect that all Taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

146. **Taxes Paid by Administrator.** All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax purposes shall be paid by the Settlement Administrator from the Settlement Fund.

147. **Expenses Paid from Fund.** Any Administrative Expenses reasonably incurred by the Settlement Administrator in carrying out its duties, including fees of tax attorneys and/or accountants, shall be paid by the Settlement Administrator from the Settlement Fund.

148. **Responsibility for Taxes on Distribution.** Any person or entity that receives a distribution from the Settlement Fund shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution. Such taxes and tax-related expenses shall not be paid from the Settlement Fund.

149. **Tompkins Is Not Responsible.** In no event shall Tompkins or any of the other Released Parties have any responsibility or liability to Plaintiff, Settlement Class Members, or to Class Counsel for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Plaintiff, Settlement Class Members, or Class Counsel. The Settlement Fund shall indemnify and hold Tompkins and the other Released Parties harmless for all such taxes and tax-related expenses (including, without limitation, taxes, and tax-related expenses payable by reason of any such indemnification).

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, dated as of July 24, 2023.

DATED: 7/21/2023

Plaintiff Stacy Mock

DocuSigned by:
Stacy Mock
A8B00E7EDAF944E...

DATED: 7/24/2023

Defendant Tompkins Community Bank

By: [signature]

Name: Francis M. Fetsko

Title: Executive Vice President

APPROVED AS TO FORM AND CONTENT

DATED: ____________________

WEITZ & LUXENBERG, PC

By: ______________________________
James J. Bilsborrow

JOHNSON FIRM

DATED: ____________________

By: ______________________________
Tyler B. Ewigleben

KALIEL GOLD PLLC

DATED: ____________________

By: ______________________________
Sophia Gold

*Counsel for Plaintiff and Class Counsel*

DATED: 7/24/23

WILLKIE FARR & GALLAGHER LLP

By: ______________________________
Debra Bogo-Ernst

*Attorneys for Defendant Tompkins Community Bank.*

APPROVED AS TO FORM AND CONTENT

DATED: ______________________

WEITZ & LUXENBERG, PC

By: ______________________
James J. Bilsborrow

DATED: 7/22/2023

JOHNSON FIRM

By: DocuSigned by: [signature] 48C09AEB7FBE442...
Tyler B. Ewigleben

DATED: 7/21/2023

KALIEL GOLD PLLC

By: [signature]
Sophia Gold

*Counsel for Plaintiff and Class Counsel*

DATED: ______________________

WILLKIE FARR & GALLAGHER LLP

By: ______________________
Debra Bogo-Ernst

*Attorneys for Defendant Tompkins Community Bank.*

# EXHIBIT 1

# PROPOSED ORDER RE: PRELIMINARY APPROVAL

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **STACY MOCK**, on behalf of herself and all others similarly situated | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. 3:22-CV-00995 (BKS/ML) |
| **TOMPKINS COMMUNITY BANK** | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT; CERTIFYING CLASS; APPROVING NOTICE; AND SETTING DATE FOR FINAL APPROVAL HEARING**

**WHEREAS**, Plaintiff Stacy Mock ("Plaintiff") and Defendant Tompkins Community Bank ("Tompkins" or "Defendant") (together the "Parties"), have reached a proposed Settlement of this Litigation, which is set forth in the Settlement Agreement and Release filed with the Court as ECF No. __ ("Settlement Agreement"); and

**WHEREAS**, Plaintiff has applied to the Court for preliminary approval of the proposed Settlement, the terms and conditions of which are set forth in the Settlement Agreement, and for conditional certification of a Settlement Class; and

**WHEREAS**, Defendant joins the request for preliminary approval of the Settlement and conditional certification of a Settlement Class; and

**WHEREAS**, the Court has fully considered the record of these proceedings, the Settlement Agreement and all the exhibits thereto, the representations, arguments, and recommendation of counsel for the Parties and the requirements of law; and

**WHEREAS**, it appears to the Court upon preliminary examination that adequate investigation and research has been conducted such that the counsel for the Parties at this time are

able to reasonably evaluate their respective positions. It further appears to the Court that settlement at this time will avoid substantial additional costs by all Parties, as well as avoid the delay and risks that would be presented by further prosecution of this Litigation; and

**WHEREAS**, it appears to the Court upon the preliminary examination that the proposed Settlement is fair, reasonable, and adequate, and that a hearing should be held after notice to the Class of the proposed Settlement to finally determine whether the proposed Settlement is fair, reasonable, and adequate and whether a Final Approval Order and Judgment should be entered in this Litigation.

**THIS COURT FINDS AND ORDERS AS FOLLOWS:**

1. The capitalized terms used in this Preliminary Approval Order shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2. Preliminary approval of the proposed settlement is granted and the Parties are ordered to direct notice of the proposed settlement to the Class, in the manner set forth below and in the Settlement Agreement. The Court finds that it likely will be able to approve the settlement pursuant to the standards set forth in Rule 23(e)(2)-(5) because it appears that (A) the Class Representative and Class Counsel have adequately represented the Class; (B) the settlement was negotiated at arm's length; (C) the settlement provides adequate relief for the Class, taking into account the costs, risks, and delay of trial and appeal, the likely attorneys' fees to be awarded, the effectiveness of the proposed method of distributing relief to the Class, and all agreements related to the settlement identified by Class Counsel; and (D) the settlement treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)–(3). Furthermore, the settlement provides Class members with an opportunity to opt out and to object. Fed. R. Civ. P. 23(e)(4)–(5). In addition, the Court has considered the *Grinnell* factors identified by the Second Circuit for

determining whether a settlement is fair, reasonable, and adequate, *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005), and concludes that they support preliminary approval of the settlement. Specifically, the Court finds that the settlement is likely to be fair, reasonable, and adequate in light of: (i) the complexity, expense, and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of proceeding and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintain the class action through the trial; (vii) the ability of the Defendants to withstand a greater judgment; (vii) the range of reasonableness of the settlement fund in light of the best possible recover; and (viii) the range of reasonableness of the settlement fund to a possible recover in light of all the attendant risks of litigation. *Id.*, *accord In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018).

3. The Settlement Agreement was entered into by experienced counsel after substantial adversarial proceedings, including significant discovery and motions, and only after extensive arm's-length negotiations, including a half-day private mediation conducted by Judge Richard A. Stone (ret.), an experienced mediator, and free of any apparent collusion.

4. For purposes of the Settlement only and subject the Settlement Agreement, the Court finds that the prerequisites for class certification under Rule 23 of the Federal Rules of Civil Procedure have been preliminarily satisfied, and conditionally certifies the following Class:

> All current and former holders of a Tompkins Community Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred more than one Overdraft Fee or NSF Fee as the result of a checking account transaction being represented for payment.

The Court excludes from the Class all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiff's counsel and Tompkins officers

and employees. The persons potentially comprising the Class and to whom Notice is to be email or mailed are identified in the Notice Database, as defined in the Settlement Agreement, which data will be maintained as indicated in the Settlement Agreement.

5. For purposes of settlement only and subject to the Settlement Agreement, the Court further finds that "Class Period" means September 20, 2016 to and including the date of this Order.

6. The Court preliminarily finds, for Settlement purposes only and subject to the Settlement Agreement, that the proposed Settlement Class satisfies the prerequisites for a settlement class action under Federal Rule of Civil Procedure 23 and, pursuant to Rule 23(b)(3), conditionally certifies the Settlement Class. In particular, the Court finds, for purposes of settlement only, that the following requirements are met:

a. The above-described Class is so numerous that joinder of all members is impracticable;

b. There are questions of law or fact common to the Class;

c. The claims of the Class Representative are typical of the claims of the Class;

d. The Class Representative will fairly and adequately protect the interests of the Class;

e. The questions of fact or law common to the members of the Class predominate over the questions affecting only individual members; and

f. Certification of the Class is superior to other available methods for the fair and efficient adjudication of the controversy. The Court notes that, because the litigation is being settled, rather than litigated, it need not consider the manageability issues that would be presented by this litigation. *Amchem Prods. Inc. v. Windsor*, 117 S. Ct. 2231, 2240 (1997).

7. The Court finds that it has personal jurisdiction over the subject matter of this Litigation and personal jurisdiction over the Parties and all Class Members, including the absent Class Members.

8. Plaintiff Stacy Mock is hereby preliminarily appointed and designated as Class Representative. This Court preliminarily finds that Plaintiff will fairly and adequately represent and protect the interests of the absent Class Members.

9. The Court appoints James J. Bilsborrow of Weitz & Luxenberg, PC; Tyler B. Ewigleben of Johnson Firm; and Sophia Gold of Kaliel Gold PLLC, as settlement Class Counsel. This Court preliminarily finds that they are competent, capable of exercising all responsibilities as Class Counsel and will fairly and adequately represent and protect the interests of the absent Class Members.

10. Class Counsel is authorized to act on behalf of the Class Members with respect to all acts or consents required by, or which may be given pursuant to, the Settlement Agreement, and such other acts reasonably necessary to consummate the Settlement Agreement. Any Class Member may enter an appearance through counsel of his or her own choosing and at his or her own expense. Any Class Member who does not enter an appearance or appear on his or her own will be represented by Class Counsel.

11. The Court approves KCC Class Action Services LLC to serve as the Settlement Administrator in this Litigation, and to fulfill the functions, duties, and responsibilities of the Settlement Administrator as set forth in the Settlement Agreement and this Order. By accepting this appointment, the Settlement Administrator has agreed to the Court's jurisdiction solely for purpose of enforcement of the Settlement Administrator's obligations under the Settlement Agreement.

12. Any information comprising or derived from the Notice Database or Class List provided to the Settlement Administrator pursuant to the Settlement Agreement shall be provided solely for the purpose of providing Notice, or following final approval, Cash Awards, to the Class Members and informing such Class Members about their rights further to this Settlement, shall be kept in strict confidence, shall not be disclosed to any third party other than as set forth in the Settlement Agreement to effectuate the terms of the Agreement or the administration process, shall be used for no other cases, and shall be used for no other purpose. To the extent that a Settlement Class Member has a question, Tompkins shall disclose information about the identity of Settlement Class Members to the limited extent required for Class Counsel to provide necessary assistance in response to such a question.

13. To the extent that any federal or state law governing the disclosure and use of consumers' financial information (including but not limited to "nonpublic personal information" within the meaning of the Graham–Leach–Bliley Act, 15 U.S.C. § 6801 *et seq*., and its implementing regulations) permits such disclosure only as required by an order of a court, this order—

a. qualifies as "judicial process" under 15 U.S.C. § 6802(e)(8), and

b. authorizes the production of such information subject to this order's protections, in which case the producing party's production of such information in accordance with this order constitutes compliance with the applicable law's requirements. To the extent that any such law requires a producing or requesting party to give prior notice to the subject of any consumer financial information before disclosure, the Court finds that the limitations in this order furnish good cause to excuse any such requirement, which the Court hereby excuses.

14. If the Settlement is terminated or is not consummated for any reason, the foregoing conditional certification of the Class and appointment of the Class Representative and Class Counsel shall be void and of no further effect, and the Parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order, without prejudice to any legal argument that any of the parties to the Settlement might have asserted but for the Settlement.

15. A Final Approval Hearing shall be held before this Court on ______, 2023, at _.m.,[1] to address, among other things: (a) whether the Court should finally certify the Settlement Class and whether the Class Representative and Class Counsel have adequately represented the Settlement Class; (b) whether the proposed Settlement should be finally approved as fair, reasonable and adequate and whether the Final Approval Order and Judgment should be entered; (c) whether the Released Claims of the Settlement Class in this Litigation should be dismissed on the merits and with prejudice; (d) whether Class Counsel's Attorneys' Fees and Costs application and the Service Award for Named Plaintiff should be approved; and (e) such other matters as the Court may deem necessary or appropriate.

16. Papers in support of final approval of the Settlement, and in support of or opposition to the Service Award to the Class Representative and Class Counsel's Attorneys' Fees and Costs application shall be filed with the Court according to the schedule set forth in Paragraph 28 below. The Final Approval Hearing may be postponed, adjourned, or continued by order of the Court by posting notice to the Settlement Class on the Settlement Website. After the Final Approval Hearing, the Court may enter a Final Approval Order and Judgment in accordance with the Settlement Agreement that will adjudicate the rights of all Settlement Class Members with respect to the Released Claims being settled. The Court may finally approve the Settlement at or after the

[1] A date not earlier than 120 days following entry of the Preliminary Approval Order as detailed in Paragraph 28 *infra*.

Final Approval Hearing with any modifications agreed to by Tompkins and the Class Representative and without further notice to the Settlement Class, except such notice as may be provided through the Settlement Website.

17. The Court approves, as to form and content, the use of a short-form Email Notice and Postcard Notice (together, the "Notice") substantially similar to the forms attached as Exhibits 3 and 4 to the Settlement Agreement, respectively. The Postcard Notice will be provided to members of the Class by first-class U.S. mail using Tompkins' records as well as other investigations deemed appropriate by the Settlement Administrator, updated by the Settlement Administrator in the normal course of business. The Postcard Notice shall be mailed within 45 days of the date of entry of this Preliminary Approval Order (the Notice Deadline). The Email Notice will be emailed to Tompkins accountholders who have provided their email address to Tompkins, within 45 days of the date of entry of this Preliminary Approval Order. The Long Form Notice, Exhibit 5 to the Settlement Agreement, will be posted on the Settlement Website established by the Settlement Administrator, as set forth under the Settlement Agreement, within 45 days of the date of the entry of this Preliminary Approval Order (the Notice Deadline). Prior to the Final Approval Hearing, the Settlement Administrator will submit to the Court a declaration of compliance with these notice provisions.

18. In the event the Postcard Notice is returned undeliverable with a forwarding address, the Settlement Administrator shall promptly re-mail the Postcard Notice to the indicated forwarding address. In the event the Postcard Notice is returned undeliverable without a forwarding address, the Settlement Administrator shall promptly perform reasonable address traces for such returned notices in accordance with the Settlement Agreement. The Settlement Administrator shall complete the remailing of Mailed Notices to those Class Members who were

identified as of that time through address traces or forwarding addresses promptly and within no later than 15 days after the initial Notice Deadline. In the event that the Email Notice is returned as undeliverable or invalid, the Settlement Administrator shall promptly mail the Postcard Notice via first-class U.S. mail to the most recent known address, based on Tompkins' records as well as other investigations deemed appropriate by the Settlement Administrator, within 15 days after the initial Notice Deadline. Except as set forth herein, there shall be no further obligation or attempt to obtain a forwarding address for any such returned mail or to further re-mail any such Postcard Notice, Email Notice or returned mail. Prior to the Final Approval Hearing, the Settlement Administrator will submit to the Court a declaration of compliance with these notice re-mailing provisions.

19. The Settlement Administrator shall have the discretion to make revisions to the format of the Notice in a reasonable manner to reduce mailing or administrative costs. Non-substantive changes may be made to the Notice by agreement of the Parties without further order of the Court.

20. The Notice, as directed in this Order and set forth in the Settlement Agreement, constitutes the best notice practicable under the unique circumstances of this case and is reasonably calculated to apprise the members of the Settlement Class of the pendency of this Litigation and of their right to object to the Settlement or exclude themselves from the Settlement Class. The Court further finds that the Notice Program is reasonable, that it constitutes due, adequate, and sufficient notice to all persons entitled to receive such notice and that it meets the requirements of due process and of Federal Rule of Civil Procedure 23.

21. The cost of Notice and Administrative Expenses shall be paid from the Settlement Fund, as provided for in the Settlement Agreement.

22. Any member of the Class who desires to be excluded from the Settlement Class, and therefore not be bound by the terms of the Settlement Agreement, must submit to the Settlement Administrator, pursuant to the instructions and requirements set forth in the Notice, a timely and valid written request for exclusion postmarked no later than 45 days following the Notice Deadline.

23. Each request for exclusion, or "Opt-Out", must be personally signed by the individual Class Member; any so-called "mass" or "class" opt-outs shall not be allowed. Further, to be valid and treated as a successful exclusion or "Opt-Out" the request must include: (i) the requester's full name, address, the last four digits of the account number, and contact telephone number or email address; (ii) the case name and number of this Litigation; (iii) an unequivocal statement that the Requestor desires to be excluded from the Settlement Class, and (iv) the requestor's signature.

24. No person shall purport to exercise any exclusion rights for any other person, or purport to exclude any other Class Member as a group, aggregate, or class involving more than one Class Member, or as an agent or representative. Any such purported exclusion shall be void and the person that is the subject of the purported opt-out shall be treated as a member of the Settlement Class and be bound by the Settlement.

25. Any member of the Settlement Class who elects to be excluded shall not be entitled to receive any of the benefits of the Settlement, shall not be bound by the release of any claims pursuant to the Settlement Agreement, and shall not be entitled to object to the Settlement or appear at the Final Approval Hearing.

26. Any Class Member who does not submit a valid and timely request for exclusion may object to the proposed Settlement. Any such Class Member shall have the right to appear and

be heard at the Final Approval Hearing, either personally or through an attorney retained at the Class Member's own expense. Any such Class Member must file with the Court and mail to the Settlement Administrator a written notice of intention to appear together with supporting papers, including a detailed statement of the specific objections made, delivered or postmarked no later than the Objection Deadline.[2] Each Objection must state (a) the case name and number of this Litigation; (b) objector's full name, current address, and the last four digits of the account number of any Tompkins account the objector claims was charged Challenged Fees in this Litigation; (c) a statement that the Settlement Class Member objects to the Settlement, in whole or in part; (d) the reasons why the objector objects to the Settlement along with copies any documents or other supporting materials; (e) the identity of any lawyer who assisted, provided advice, or represents the objector as to this case or such objection, if any; and (f) whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing either *pro se* or through counsel and whether the objecting Settlement Class Member plans on offering testimony at the Final Approval Hearing; and (g) the objector's original signature. Persons wishing to speak at the hearing must file by the same Objection Deadline a Notice of Intent to Appear containing such information as explained fully in the approved Notices. Any Settlement Class Member that fails to do object in the manner set forth herein shall be deemed to have waived, and shall forever be foreclosed from raising, any objection or opposition, by appeal, collateral attack, or otherwise and shall be bound by all of the terms of this Settlement upon Final Approval and by all proceedings, orders and judgments, including but not limited to the Release in the Litigation.

27. Pending entry of the Final Approval Order and Judgment, the Plaintiff, Class Members, and any person or entity purporting to act on their behalf, are preliminarily enjoined

[2] A date that is no later than 45 days following the Notice Deadline and which will be specified by reference to a date certain in the Notices.

from commencing or prosecuting (either directly, representatively, or in any other capacity) any Released Claim against any of the Released Parties in any action, arbitration or proceeding in any court, arbitration forum, or tribunal; provided, however, that this injunction shall not apply to individual claims of any Class Members who timely exclude themselves in a manner that complies with this Order and the Settlement Agreement. This injunction is necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

28. Further settlement proceedings in this matter shall proceed according to the following schedule:

| EVENT | SCHEDULED DATE |
|---|---|
| Notice deadline (short-form Postcard Notice, Email Notice, and Long Form website posting) | 45 days after entry of Preliminary Approval Order |
| Attorney's Fees and Costs and Service Award application | 15 days before Objection Deadline |
| Last day for Class Members to opt out of Settlement (the Opt-Out Deadline) | 45 days after Notice Deadline |
| Last day for Class Members to Object to the Settlement (the Objection Deadline) | 45 days after Notice Deadline |
| Briefs in support of Final Approval or Opposition to any Objections due by | 14 days prior to the Final Approval Hearing |
| Tompkins to file certification regarding CAFA notice requirements | 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | On the date set in paragraph 15, but no earlier than 120 days after entry of Preliminary Approval Order |

29. Service of all papers on counsel for the parties shall be made as follows: for settlement Class Counsel to Sophia Gold, Kaliel Gold PLLC, 950 Gilman Street, Ste 200,

Berkeley, CA 94710; for Defendant to Debra Bogo-Ernst, Willkie Farr & Gallagher LLP, 300 N. LaSalle Dr., Chicago IL 60654.

30. Class Counsel" refers individually and collectively to James J. Bilsborrow of Weitz & Luxenberg, PC and Tyler B. Ewigleben of Johnson Firm.

31. The address of this Court for purposes of any Objection as set forth in paragraph 26 is: Clerk of the Court, U.S. District Court for the Northern District of New York, PO Box 7367 Syracuse, NY 13261.

32. In the event that a Final Approval Order and Judgment is not entered by the Court, or the Effective Date of the Settlement does not occur, or the Settlement Agreement otherwise terminates according to its terms, this Order and all orders entered in connection therewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever, including without limitation for any evidentiary purpose (including but not limited to class certification), in this Litigation or any other action. In such event the Settlement Agreement, exhibits, attachments and all negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all of the parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

33. Any deadlines set in this Preliminary Approval Order may be extended, or other aspects of the settlement modified, by order of the Court, for good cause shown, without further notice to the Settlement Class, except that notice of any such orders shall be posted by the Settlement Administrator to the Settlement Website that the Settlement Administrator will establish and maintain in accordance with the Agreement. Class Members should check the Settlement Website regularly for updates, changes, and/or further details regarding extensions of

deadlines, orders entered by the Court, and other information regarding the settlement.

34. The Parties are hereby authorized to establish the means necessary to administer the Settlement.

35. All discovery and other litigation activity and proceedings in this Litigation, other than as necessary to carry out the terms and conditions of the Settlement or the responsibilities related thereto, are hereby suspended and stayed pending final approval of the Settlement and further order of this Court.

36. The Settlement shall not constitute an admission, concession, or indication of the validity of any claims or defenses in the Litigation, or of any wrongdoing, liability, or violation by Tompkins, which vigorously denies all of the claims and allegations raised in the Litigation.

It is SO ORDERED.

Date: ____________________

________________________________
Hon. Brenda K. Sannes
United States District Court Judge for
the Northern District of New York

# EXHIBIT 2

# PROPOSED ORDER RE:

# FINAL APPROVAL & JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **STACY MOCK**, on behalf of herself and all others similarly situated | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. _ 3:22-CV-00995 (BKS/ML) |
| **TOMPKINS COMMUNITY BANK** | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT**

**WHEREAS,** on _____ 2023, this Court entered an Order Granting Preliminary Approval of Proposed Settlement Agreement (the "Preliminary Approval Order"), preliminarily approving the proposed settlement of this Litigation pursuant to the terms of the Parties' Settlement Agreement and Release ("Settlement Agreement") and directing that notice be given to the Class Members;

**WHEREAS,** pursuant to the Parties' plan for providing notice to the Class (the "Notice Program"), the Settlement Class was notified of the terms of the proposed settlement and of a Final Approval Hearing to determine, *inter alia*, whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release and dismissal of the Released Claims against the Released Parties as contemplated in the Settlement Agreement, and whether judgment should be entered dismissing the Litigation with prejudice; and

**WHEREAS,** a Final Approval Hearing was held on ______, 2023. Prior to the Final Approval Hearing, proof of completion of the Notice Program was filed with the Court, along with declarations of compliance. Class Members were therefore notified of the terms of the proposed settlement and their right to appear at the hearing in support of or in opposition to the proposed

settlement, the amount of attorney's fees and costs requested by Class Counsel, and the Service Award requested for the Class Representative;

**NOW, THEREFORE,** the Court, having heard the oral presentations made at the Final Approval Hearing, having reviewed all of the submissions presented with respect to the proposed settlement, having determined that the settlement is fair, adequate, and reasonable, having considered Class Counsel's Motion for Attorney's Fees and Costs and the Class Representative's Service Award, together with any briefing and argument in support thereof or in opposition thereto, and having reviewed the materials in connection therewith, and good cause appearing, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The capitalized terms used in this Order shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2. The Court has jurisdiction over the subject matter of this Litigation, all claims raised therein, and all Parties thereto, including Settlement Class Members.

3. The Court finds, solely for purposes of considering this settlement and this Final Approval Order, that the requirements of Federal Rule of Civil Procedure 23 are satisfied, including requirements for the existence of numerosity, commonality, typicality, adequacy of representation, and manageability of the Settlement Class for settlement purposes, that common issues of law and fact predominate over individual issues, and that settlement and certification of the Settlement Class is superior to alternative means of resolving the claims and disputes at issue in this Litigation.

4. The Settlement Class, which will be bound by this Final Approval Order, shall include all Class Members who did not submit a timely and valid Opt-Out request. The individuals who have timely requested exclusion from the Settlement Class are identified in Exhibit A attached

hereto. The individuals listed on Exhibit A are hereby excluded from the Settlement Class, are not bound by the Settlement Agreement, and shall not be entitled to any of the benefits afforded to Settlement Class Members under the Settlement Agreement.

5. For purposes of settlement and this Final Approval Order only, Plaintiff Stacy Mock ("Plaintiff") is appointment and shall serve as Class Representative of the Settlement Class.

6. For purposes of settlement and this Final Approval Order only, the Court appoints the following as Class Counsel on behalf of Plaintiff and the Settlement Class: James J. Bilsborrow of Weitz & Luxenberg, PC; Tyler B. Ewigleben of Johnson Firm; and Sophia Gold of Kaliel Gold PLLC.

7. For purposes of settlement and this Final Approval Order only, the Court hereby certifies the following Settlement Class:

> All current and former holders of a Tompkins Community Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred more than one Overdraft Fee or NSF Fee as the result of a checking account transaction being represented for payment.

The Settlement Class excludes all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiff' counsel and Tompkins officers and employees.

8. The persons comprising the certified Settlement Class are identified in the Class List, as defined in the Settlement Agreement, which list will be maintained as indicated in the Settlement Agreement. The Settlement Class does not include the individuals listed on Exhibit A.

9. For purposes of settlement only, certification of the Settlement Class and this Final Approval Order, the Court further finds that "Class Period" means September 20, 2016 to and including [date of preliminary approval], 2023.

10. The Court finds for purposes of settlement only that the Settlement Class satisfies the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Court finds, for purposes of settlement only, that the following requirements are met: (a) the above-described Settlement Class Members are so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) Plaintiff's claims are typical of Settlement Class Members' claims; (d) Plaintiff has fairly and adequately represented the interests of the Settlement Class and will continue to do so, and Plaintiff has retained experienced Class Counsel; (e) the questions of law and fact common to the Settlement Class Members predominate over any affecting any individual Settlement Class Member; and (f) a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23 and is superior to alternative means of resolving the claims and disputes at issue in this Litigation.

11. Notwithstanding the certification of the foregoing Settlement Class and the appointment of Class Counsel and of the Class Representative for purposes of effecting the settlement, if this Order is reversed on appeal, or the Settlement is terminated or is not consummated for any reason, the foregoing certification of the Settlement Class and appointment of Class Counsel and of the Class Representative shall be void and of no further effect, and the Parties to the proposed settlement shall be returned to the status each occupied before entry of this Order as if no Class was certified and without prejudice to any legal argument that any of the Parties to the settlement might have asserted but for the settlement.

12. The Court finds that the Notice Program set forth in Section X of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute, and was reasonably calculated to provide

and did provide, due and sufficient notice to the Settlement Class of the pendency of this Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, the date of the Final Approval Hearing, and the right to object and to appear at the Final Approval hearing or to exclude themselves from the settlement, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.

13. The Court hereby approves the settlement, including the plan for the calculation and distribution of the Cash Awards, and finds that the settlement, as set forth in the Settlement Agreement and this Order, satisfies each of the requirements of Federal Rule of Civil Procedure 23(e)(2) and is in all respects fair, reasonable, adequate, and in the best interests of the Settlement Class, taking into account the *Grinnell* factors used by the Second Circuit: (i) the merits of the plaintiffs' case, weighed against the terms of the settlement; (ii) the defendant's financial condition; (iii) the complexity and expense of further litigation; and (iv) the amount of opposition to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018). The Court further finds that the Class Representative and Class Counsel have at all times adequately represented the Class and the settlement negotiations that resulted in the settlement were at all times conducted at arm's length. The Court also finds that Class Counsel have identified all required agreements related to the settlement and that, because the settlement provides a minimum award payment in equal amount to all Class Members from the Settlement Fund and also provides for a pro rata distribution of the Settlement Fund commensurate with alleged harm to Class Members, the settlement treats all Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). The Court finds that the recovery provided by the settlement is reasonable, including

in light of the merits and complexity of the case, and the degree of opposition to the settlement. *Wal-Mart*, 396 F.3d at 117. For all of these reasons, the Court grants final approval of the settlement.

14. The Parties shall effectuate the Settlement Agreement according to its terms. The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an Order of this Court.

15. Provided the Effective Date has occurred, distribution of the Cash Awards to Settlement Class Members provided for in the Settlement Agreement shall be paid to Settlement Class Members, pursuant to the terms and conditions of the Settlement Agreement and Sections V and VI thereof.

16. The Court has considered all objections to the settlement, including the objections of ____. The Court finds these objections do not counsel against settlement approval and they are hereby overruled in all respects. [*IF NO OBJECTIONS, modify:* Settlement Class Members were duly afforded an opportunity to object to the settlement and there were no objections to the settlement].

17. Upon the Effective Date, the Releasors shall have, by operation of this Final Approval Order, fully, finally, and forever released, relinquished, and discharged the Released Parties from all Released Claims pursuant to Section VII of the Settlement Agreement.

18. Releasors are hereby permanently barred and enjoined from instituting, commencing, or prosecuting, either individually or as a class, or in any other capacity, any Released Claims against any of the Released Parties. In addition, Plaintiff and each Settlement Class Member are hereby enjoined from asserting as a defense, including as a set-off or for any other purpose, any argument that if raised as an independent claim would be part of the Released

Claims.

19. This Final Approval Order, the Final Judgment, the Settlement Agreement, the settlement which it reflects, and any and all acts, statements, documents, or proceedings relating to the settlement are not, and shall not be construed as or used as an admission by or against Tompkins or any other Released Party of any fault, wrongdoing, or liability on their part, or of the validity of any Released Claim or of the existence or amount of damages. This Final Approval Order and the Settlement Agreement do not constitute a concession and shall not be used as an admission or indication of any wrongdoing, fault, or omission by Tompkins or any of the other Released Parties or any other person in connection with any transaction, event or occurrence, and neither this Final Approval Order nor the Settlement Agreement nor any related documents in this proceeding, nor any reports or accounts thereof, shall be offered or received in evidence in any civil, criminal, or administrative action or proceedings, other than such proceedings as may be necessary to consummate or enforce this Final Approval Order, the Settlement Agreement, and all releases given thereunder, or to establish the affirmative defenses of *res judicata* or collateral estoppel barring the pursuit of claims released in the Settlement Agreement. This Final Approval Order also does not constitute any opinion or position of the Court as to the merits of the claims and defenses related to this Litigation.

20. The claims of the Class Representative and all Settlement Class Members in this Litigation, and as defined as Released Claims in Section VII of the Settlement Agreement, are hereby dismissed in their entirety with prejudice. Except as otherwise provided in this Order and/or in this Court's Order Awarding Attorneys' Fees and Costs in this Litigation, entered in response to Class Counsel's motion therefor brought in connection with the settlement, the Parties shall bear their own costs and attorneys' fees. The Court reserves jurisdiction over the implementation of the

settlement, including enforcement and administration of the Settlement Agreement, including any releases in connection therewith and any other matters related or ancillary to the foregoing.

21. The Court, being fully advised and having afforded Class Members an opportunity to object, finds that the Class Settlement is fair and reasonable under Rule 23 of the Federal Rules of Civil Procedure, the Notice sent to Class Members satisfies the requirements of Rule 23 and due process, and the Parties have fully complied with the Preliminary Approval Order.

22. The Court finds that Tompkins provided Class Action Fairness Act ("CAFA") notice to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715.

23. The Court finds that no reason exists for delay in entering this Final Approval Order. Accordingly, the Clerk is directed to enter this Final Approval Order and the accompanying Judgment of Dismissal.

24. The Parties, without further approval from the Court, are hereby permitted to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Approval Order and Judgment of Dismissal and do not limit the rights of the Settlement Class Members.

25. All Settlement Class Members are bound by this Final Approval Order and the Judgment of Dismissal. They are further bound by the terms of the Settlement Agreement including, but not limited to, its Release provisions.

26. Notice of entry of this Order and the ensuing Judgment of Dismissal has been given to Class Counsel on behalf of the Settlement Class. It shall not be necessary to send notice of entry of this Final Approval Order or ensuing Judgment of Dismissal to individual members of the Settlement Class.

27. In the event that the Settlement Agreement is terminated pursuant to its own terms; or the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of Dismissal are reversed, vacated, or modified in any material respect by this or any other court; then: (a) all orders entered pursuant to the Settlement Agreement shall be vacated, including this Final Approval Order; (b) the instant action shall proceed as though a Settlement Agreement had never been reached; and (c) no reference to the prior Settlement Agreement, or any documents or actions related thereto, shall be made for any purpose; provided, however, that the Parties to the Settlement Agreement agree to appeal an adverse ruling jointly and if the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of Dismissal are upheld on appeal in all material respects, then the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of Dismissal shall be given full force and effect.

28. Without affecting the finality of this Final Approval Order or the Judgment of Dismissal for purposes of appeal, the Court retains jurisdiction as to all matters related to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Approval Order and accompanying Judgment of Dismissal, and for any other necessary purpose.

It is SO ORDERED.

Date: ____________________ ____________________________________

Hon. Brenda K. Sannes
United States District Court Judge for
the Northern District of New York

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **STACY MOCK**, on behalf of herself and all others similarly situated<br><br>Plaintiff<br><br>v.<br><br>**TOMPKINS COMMUNITY BANK**<br><br>Defendants. | ) | Case No. _ 3:22-CV-00995 (BKS/ML) |

**[PROPOSED] JUDGMENT OF DISMISSAL**

This action came before the Court on Plaintiff Stacy Mock's ("Plaintiff") and Defendant Tompkins Community Bank's ("Tompkins") (together, the "Parties") Motion for Final Approval of the Parties' class action Settlement Agreement and Release ("Settlement Agreement").

The Court having entered its Order granting Final Approval of Settlement and directing entry of judgment of dismissal,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1. All Released Claims of all Settlement Class Members against Tompkins, as defined in the Settlement Agreement, are dismissed with prejudice.

2. All claims of Plaintiff against Tompkins are dismissed with prejudice.

3. The Litigation is dismissed with prejudice.

4. Notwithstanding the foregoing dismissal of claims and the Litigation in the preceding paragraphs, the Court shall retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement, and to supervise and adjudicate any disputes arising from the disbursement of the Settlement Fund.

5. All Settlement Class Members, as defined in this Court's Final Approval Order, are bound by the Release set forth in the Parties' Settlement Agreement at Section VII and are hereby permanently enjoined and restrained from filing, prosecuting, or otherwise asserting any Released Claims against any Released Party as those terms are defined in the Parties' Settlement Agreement.

6. The Parties shall comply with and implement the Settlement Agreement and provide the Settlement Class Members with the benefits set forth therein.

IT IS SO ORDERED.

Date: ____________________ ____________________________________

Hon. Brenda K. Sannes
United States District Court Judge for
the Northern District of New York

# EXHIBIT 3:
# POSTCARD NOTICE

# COURT ORDERED NOTICE OF CLASS ACTION SETTLEMENT

You may be a member of the settlement class in *Mock v. Tompkins Community Bank*, Case No. 3:22-cv-00995 (N.D.N.Y), in which the plaintiff alleges that defendant Tompkins Community Bank ("Defendant") incorrectly assessed overdraft fees on re-presented transaction between September 20, 2016 and [date of preliminary approval]. If you are a Settlement Class Member and if the Settlement is approved, you may be entitled to receive an account credit or a cash payment from the $450,000.00 Settlement Fund, all benefits established by the Settlement.

The Court has preliminarily approved this settlement. It will hold a Final Approval Hearing in this case on [PARTIES TO INSERT DATE]. At that hearing, the Court will consider whether to grant final approval to the settlement, and whether to approve payment from the Settlement Fund of up to $5,000 in service awards to the named plaintiff, up to one-third of the Settlement Amount as attorneys' fees, and reimbursement of costs to the attorneys and the Settlement Administrator. If the Court grants final approval of the settlement and you do not request to be excluded from the settlement, you will release your right to bring any claim covered by the Settlement. In exchange, Defendant has agreed to issue a credit to your account, a cash payment to you if you are no longer a member.

**To obtain a long form class notice and other important documents please visit www.Mockfeesettlement.com. Alternatively, you may call [INSERT PHONE #].**
*If you do not want to participate in this settlement—you do not want to receive a credit or cash payment and you do not want to be bound by any judgment entered in this case—you may exclude yourself by submitting an opt-out request postmarked no later than [PARTIES TO INSERT DATE]. If you want to object to this settlement because you think it is not fair, adequate, or reasonable, you may object by submitting an objection postmarked no later than [PARTIES TO INSERT DATE]. You may learn more about the opt-out and objection procedures by visiting www.Mockfeesettlement.com or by calling [Insert Phone #].*

# EXHIBIT 4:
# INDIVIDUAL EMAIL NOTICE

# LEGAL NOTICE BY ORDER OF COURT

**This Notice describes rights you may have in connection with the settlement of a lawsuit:**

**IF YOU WERE ASSESSED OVERDRAFT OR NSF FEES ON A PERSONAL OR BUSINESS CHECKING ACCOUNT MAINTAINED BY TOMPKINS DURING THE CLASS PERIOD, YOU MAY BE ELIGIBLE FOR A CASH PAYMENT, AN ACCOUNT CREDIT OR FORGIVENESS OF CHARGED OFF FEE AMOUNTS FROM A CLASS ACTION SETTLEMENT.**

*The United States District Court for the Northern District of New York authorized this Notice. This is not a solicitation from a lawyer.* ***This is not a legal action against you.***

**Why Am I Getting This Notice?** You are receiving this notice because Tompkins Community Bank ("Tompkins")'s records indicate that you had or have a consumer or business checking account with Tompkins, and were charged one or more overdraft or nonsufficient funds (NSF) fees (collectively, the "Challenged Fees") on that account during the Class Period. Therefore, you may be eligible for a cash payment or an account credit from a class action settlement. Specifically, a settlement has been reached in a class action lawsuit entitled *Mock v. Tompkins Community Bank*, Case No. 3:22-cv-00995 (N.D.N.Y). The individuals who brought this case allege that Tompkins breached its customer agreements and related obligations by assessing overdraft or insufficient fund fees in connection with re-presented transactions that were initially denied due to insufficient funds. Tompkins' records indicate that you were assessed Challenged Fees during the Class Period, and therefore are eligible to receive a benefit from the settlement.

**What Does the Settlement Provide?** The proposed settlement provides for a funding total of $450,000, which will be used to make payments to the class members after first making deductions for notice and administrative costs, a Service Award to the Class Representative, and attorneys' fees for Class Counsel.

**Has The Court Decided Who Is Right**? No. By conditionally certifying a settlement class and ordering that this Notice be provided, the Court has not decided whether Plaintiffs will win or lose. Your job right now is to decide whether you want to stay in this case (by doing nothing), or exclude yourself.

**What Happens If I Do Nothing?** By doing nothing, you will stay in the Class. If you stay in, and the settlement is approved by the court and becomes final, you will receive a deposit into your Tompkins checking account or a check in the mail reflecting your share of the settlement; you will also be legally bound by the settlement agreement.

**What Happens If I Exclude Myself?** Alternatively, if you do not want to be legally bound by the settlement, you can **opt out** from the Class—that is, be excluded from the Class. If you exclude yourself from the Class, and the Class gets any money or other benefits, you will not be able to get any of that money or those benefits. However, if you exclude yourself, you will not be legally bound by the Court's judgments in this case and you will be able to sue Tompkins on your own about the same legal claims that are involved in this case, now or in the future, to the extent you

have claims against Tompkins. If you exclude yourself and pursue your own lawsuit, you'll have to hire and pay your own lawyer and you'll have to prove your claims in that case.

**How Do I Opt Out?** You must send a letter to the Settlement Administrator identifying:

1. Your name, mailing address, contact telephone number or email address, and the last four digits of your Tompkins account number;
2. the name and case number of this lawsuit (*Mock v. Tompkins Community Bank*, Case No. 3:22-cv-00995 (N.D.N.Y));
3. a statement that you wish to exclude yourself from the Settlement Class; and
4. your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is postmarked no later than [date]:

Settlement Administrator: [address]

*REQUESTS FOR EXCLUSION FROM THE CLASS THAT ARE NOT POSTMARKED ON OR BEFORE [date] WILL NOT BE HONORED.*

**What Other Rights Do I Have**? If you stay in the settlement, you may object to it by [**date**] ("Objection Deadline"). The Court is currently scheduled to hold a hearing on [**date**] to consider whether to approve the settlement, Class Counsel's request for attorneys' fees and expenses, and a Service Award for the Class Representatives. You can appear at the hearing, but you do not have to appear. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. If you object to any part of the settlement, fee request, or Service Award, you must provide a written objection, signed by you, to the Settlement Administrator and the Court, by the Objection Deadline, with the following information: (a) the case name and number of this Litigation; (b) your full name, current address, and the last four digits of the account number of any Tompkins account that you claim was charged Challenged Fees; (c) a statement that you object to the Settlement, in whole or in part; (d) the reason(s) why you object to the settlement along with any supporting materials; (e) the identity of any lawyer who assisted, provided advice, or represents you as to this case or such objection, if any; and (f) whether you will appear, either on your own or through counsel, at the final hearing regarding the settlement and whether you plan on offering testimony at the Final Approval Hearing. Please note that the hearing date is subject to change; contact the Settlement Administrator at the number below or visit the Settlement Website for the most up-to-date information and complete instructions regarding how to object.

**When Will the Court Decide Whether to Grant Final Approval to the Settlement?** The Court has preliminarily approved this settlement. It will hold a Final Approval Hearing in this case on [PARTIES TO INSERT DATE]. At that hearing, the Court will consider whether to grant final approval to the settlement, and whether to approve payment from the Settlement Fund of up to $5,000 in service awards to the named plaintiff, up to one-third of the Settlement Amount as attorneys' fees, and reimbursement of costs to the attorneys and the Settlement Administrator. If the Court grants final approval of the settlement and you do not request to be excluded from the settlement, you will release your right to bring any claim covered by the Settlement. In exchange, Defendant has agreed to issue a credit to your account, a cash payment to you if you are no longer a member, and/or to forgive certain overdraft fees.

The foregoing description of the Settlement Agreement and Release does not purport to be complete and is qualified in its entirety by reference to the full text of the Settlement Agreement and Release, a copy of which is available on the settlement website: **www.Mockfeesettlement.com**. In the event of a conflict between the foregoing description and the provisions of the Settlement Agreement and Release, the provisions of the Settlement Agreement and Release prevail.

**FOR MORE INFORMATION, call the Settlement Administrator's toll free number (***-***-****), or visit www.Mockfeesettlement.com.**

# EXHIBIT 5:

# LONG FORM NOTICE

# LEGAL NOTICE BY ORDER OF COURT

**IF YOU WERE ASSESSED OVERDRAFT OR NSF FEES ON A PERSONAL OR BUSINESS CHECKING ACCOUNT MAINTAINED BY TOMPKINS DURING THE CLASS PERIOD, YOU MAY BE ELIGIBLE FOR A CASH PAYMENT OR AN ACCOUNT CREDIT FROM A CLASS ACTION SETTLEMENT.**

**This Notice describes rights you may have in connection with the settlement of a lawsuit.**

*The United States District Court for the Northern District of New York authorized this Notice. This is not a solicitation from a lawyer.* ***This is not a legal action against you.***

- Tompkins Community Bank ("Tompkins") has agreed to pay $450,000 into a fund from which eligible persons will receive cash payments or account credits. The fund also will be used to pay settlement Administrative Expenses and any Court-awarded Service Awards, attorneys' fees, and costs.

- The settlement resolves a lawsuit brought against Tompkins' regarding Overdraft Fees and non-sufficient fund ("NSF") fees that may be assessed when a checking account transaction is presented multiple times for payment (collectively "Challenged Fees").

- If you were assessed any Challenged Fees during the Class Period by Tompkins on a business or personal checking account, you fit the description of the Settlement Class (as defined below), and are eligible to receive a payment or an account credit.

- Court-appointed lawyers for the Settlement Class ("Class Counsel") will ask the Court for a payment of up to $150,000 from the fund as attorneys' fees, which is equal to one-third of the Settlement Amount. Class Counsel also will ask the Court to reimburse them for the out-of-pocket expenses they paid to investigate the facts and litigate the case.

- The named Plaintiff will also seek approval of a $5,000 Service Award from the Court.

- The two sides disagree on whether the named Plaintiff and the Settlement Class could have won at trial.

- Your legal rights are affected whether you act or don't act. Read this Notice carefully.

  The foregoing description of the Settlement Agreement and Release does not purport to be complete and is qualified in its entirety by reference to the full text of the Settlement Agreement and Release, a copy of which is available on the settlement website:
  **www.Mockfeesettlement.com**. In the event of a conflict between the foregoing description and the provisions of the Settlement Agreement and Release, the provisions of the Settlement Agreement and Release prevail.

FOR ADDITIONAL INFORMATION REGARDING THIS SETTLEMENT, OR FOR INFORMATION ON HOW TO REQUEST EXCLUSION FROM THE SETTLEMENT CLASS OR FILE AN OBJECTION, PLEASE CONTACT THE SETTLEMENT ADMINISTRATOR AT ____________. **Please <u>do not</u>** call or write the Court, the Court Clerk's office, Tompkins, or Tompkins' Counsel for more information. They will not be able to assist you.

| **BASIC INFORMATION** |
|---|
| The purpose of this Notice is to let you know that a proposed settlement has been reached in a proposed class action case entitled *Mock v. Tompkins Community Bank*, Case No. 3:22-cv-00995, pending in the U.S. District Court for the Northern District of New York. Plaintiff has alleged that: (1) Tompkins breached its customer contracts and implied duty of good faith and fair dealing by assessing more than one Overdraft Fee or NSF Fee when a checking account transaction is presented multiple times for payment; (2) Tompkins was unjustly enriched by its collection of such Overdraft Fees or NSF Fees; and (3) Tompkins violated New York General Business Law § 349 *et seq*. Tompkins denies Plaintiff's allegations, denies that it did anything wrong, and maintains that it assessed Overdraft Fees and NSF Fees consistent with the relevant agreement and industry best practices. The Court has not decided who is right.<br><br>You have legal rights and options that you may act on before the Court decides whether to approve the proposed settlement. Because your rights will be affected by this settlement, it is extremely important that you read this Notice carefully. This Notice summarizes the settlement and your rights under it. |

| **YOUR LEGAL RIGHTS AND OPTIONS** | |
|---|---|
| **DO NOTHING** | If you are eligible for a Cash Award, you do not need to submit a claim to receive the settlement benefits. If you are a current Tompkins accountholder and are eligible for a Cash Award, you will receive a direct deposit into your checking account reflecting your share of the settlement; if you are a former Tompkins accountholder and are eligible for a Cash Award, you will receive a check sent to the most recent address that the Settlement Administrator can locate for you. |
| **EXCLUDE YOURSELF BY [DATE]** | If you choose to exclude yourself from the settlement, you will get no benefit from the settlement fund, but you will keep any rights you have to bring your own suit against Tompkins at your own expense. This is the only option that allows you |

| | |
|---|---|
| | to ever be part of any other separate lawsuit against Tompkins about the legal claims in this case. |
| **OBJECT BY [DATE]** | Write to the Court explaining why you don't like the settlement. |
| **ATTEND A HEARING ON [DATE]** | Ask to speak in Court about the fairness of the settlement. |

The Court in charge of this case still has to decide whether to approve the settlement. If it does and any appeals are resolved, benefits will be distributed to those who qualify and do not exclude themselves. Please be patient.

**WHAT THIS NOTICE CONTAINS [ADD PAGE #S AFTER FINALIZED]**


1. WHO IS IN THE SETTLEMENT? ····················································
2. WHAT IS THIS LITIGATION ABOUT? ·········································
3. WHO REPRESENTS ME? ·························································
4. WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT? ············
5. DO I HAVE TO PAY THE LAWYERS REPRESENTING ME?··················
6. WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT CLASS IN THIS CASE? ·························································
7. WHAT IF I DO NOT AGREE WITH THE SETTLEMENT?······················
8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS? ········
9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED? ··························································
10. WHAT IF I DO NOTHING AT ALL?············································
11. WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING? ······
12. IS THIS THE ENTIRE SETTLEMENT AGREEMENT? ··························
13. WHERE CAN I GET MORE INFORMATION? ···································

## 1. WHO IS IN THE SETTLEMENT CLASS?

The judge in the case has certified the following Class for settlement purposes only (hereinafter, the "Settlement Class"):

> All current and former holders of a Tompkins Community Bank personal or business checking account, regardless of the state of residence or citizenship of its account holder, who, during the Class Period, incurred more than one Overdraft Fee or NSF Fees as the result of a checking account transaction being represented for payment.
>
> The Class excludes all judicial officers presiding over this Litigation and their staff, and any of their immediate family members as well as Plaintiffs' counsel and Tompkins officers and employees.

If you received notice of the settlement directed to you, records indicate that you are a member of the Class.

If you are not sure whether you are in the Settlement Class, or have any other questions about the Settlement, you may contact the Settlement Administrator at ___.

## 2. WHAT IS THIS LAWSUIT ABOUT?

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. All of these people are a class, or class members. One court resolves the issues for all class members, except those who exclude themselves from the class.

Here, the Class Representative alleges that Tompkins improperly assessed Overdraft Fees or NSF Fees as the result of a checking account transaction being represented for payment and, that by so doing, Tompkins purportedly breached the terms of its customer agreements, breached the covenant of good faith and fair dealing, was unjustly enriched, and violated New York General Business Law § 349. This is just a summary of the allegations. The operative complaint in the lawsuit is available online at **www.Mockfeesettlement.com** and contains all of the allegations. Tompkins denies these allegations; however, in order to avoid the expense, inconvenience, and distraction of continued litigation, the Parties have agreed to the settlement described herein in this notice and the entire Settlement Agreement and Release is available at **www.Mockfeesettlement.com**.

## 3. WHO IS REPRESENTING ME?

Stacy Mock sued Tompkins, and the Court has appointed her to be the Class Representative for the Settlement Class.

The Court also approved James J. Bilsborrow of Weitz & Luxenberg, PC; Tyler B. Ewigleben of Johnson Firm; and Sophia Gold of Kaliel Gold PLLC as Class Counsel. Class Counsel represents the Class of which you are a part, but if you want to be represented by your own individual lawyer, you may hire one at your own expense.

## 4. What Benefits Can I Receive From The Settlement?

Tompkins has agreed to pay $450,000 to be divided among all Settlement Class Members who do not exclude themselves from the Settlement after any fees, costs, Service Award to the named plaintiff, and settlement expenses have been deducted. Your share of the settlement will be calculated as a pro rata proportion of the Net Settlement Fund, based on the number of qualifying Overdraft Fees or NSF Fees you were assessed during the Class Period.

If you do not exclude yourself from the Settlement Class, and are a current Tompkins accountholder, you will receive a direct deposit equivalent to your pro rata share of the Settlement; if you are not a current Tompkins accountholder, the Settlement Administrator will mail you a check. You may be required to first provide certain tax-related documentation to the Settlement Administrator in order to be eligible to receive your account credit or check, including an IRS Form W-9.

If you receive a check, you will have 120 days from the date of the check to cash the check. If you do not cash the check within 120 days, your check will be void and the funds will be used as the Court deems appropriate, including redistribution to other Class Members or distribution to a charitable organization.

## 5. DO I HAVE TO PAY THE LAWYERS REPRESENTING ME?

No. Class Counsel will ask the Court to approve payment of up to one-third of Settlement Amount. Class Counsel also will ask to be reimbursed for any out-of-pocket expenses. These payments would pay Class Counsel for their time investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also request a Service Award of up to $5,000 the Class Representative (Plaintiff Stacy Mock) in recognition of her service to the Settlement Class. The amount of any fee or Service Award will be determined by the Court. Class Counsel's contact information is as follows:

[To be filled in by Class Counsel]

## 6. What Am I Agreeing To By Remaining In The Settlement Class In This Case?

Unless you exclude yourself, you will be part of the Settlement Class, and you will be bound by the release of claims in the settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be part of any lawsuit against Tompkins or the other Released Parties asserting a "Released Claim," as defined below. It also means that the Court's Order approving the settlement and the judgment in this case will apply to you and legally bind you.

The "Released Claims" that you will not be able to assert against Tompkins or the Released Parties if you remain a part of the Settlement Class are as follows: "Released Claims" means any and all claims, demands, damages, costs, attorneys' fees, disputes, liabilities, actions, rights, suits or causes of action, losses or remedies of any kind or nature whatsoever, against Released Parties, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or any legal or equitable theory, right of action or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, actual or contingent,

liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of, or relate to, or are based upon or in any manner related or connected with: (i) any Challenged Fee charged by Tompkins in connection with a personal or business checking account, regardless of the state of residence or citizenship of the accountholder; (ii) a claim that Tompkins assessed a Challenged Fee on any Tompkins personal or business checking account transaction based on re-presentment of a checking account transaction; (iii) any claim that was, or could be, asserted in connection with the Litigation including, but not limited to, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, unjust enrichment, and/or the New York General Business Law § 349 *et seq.*; and (iv) any alleged failure to adequately or clearly disclose Tompkins practices and policies related to assessment of the Challenged Fees. Such release applies regardless of how such claims are pled. This Agreement does not imply that any such claims exist or are valid.

"Released Parties" means Tompkins and each of its respective past, present, and future parents, subsidiaries, acquired and affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, agents, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives.

## 7. WHAT IF I DO NOT AGREE WITH THE SETTLEMENT

If you are a member of the Settlement Class, and you do not exclude yourself from the settlement, you may object to the settlement or any part of the settlement that you think the Court should reject, and the Court will consider your views. To object, you must send your objection to the Court and the Settlement Administrator, providing:

1. the case name and case number of this Litigation (*Mock v. Tompkins Community Bank*, Case No. 3:22-cv-00995 (N.D.N.Y));
2. your full name, current address, email address, and the last four digits of your Tompkins account number;
3. a statement that you object to the Settlement, in whole or in part;
4. the reasons why you object to the settlement along with any supporting materials;
5. the identity of any lawyer who assisted, provided advice, or represents you as to this case or such objection, if any;
6. your signature; and
7. whether you will appear, either on your own or through counsel, at the final hearing regarding the settlement and whether you plan on offering testimony at the Final Approval Hearing.

**Your objection must be postmarked no later than [date].** Objections must be mailed to all of the following addresses:

| **The Settlement Administrator** | **The Court** |
|---|---|
| KCC Class Action Services LLC<br><br>[Address] | Clerk of the Court<br>U.S. District Court Northern District of NY<br>PO Box 7367<br>Syracuse, NY 13261 |

## 8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS?

If you want to exclude yourself from the Settlement Class, sometimes referred to as "opting- out," you will not be eligible to recover any benefits as a result of this settlement. However, you will keep the right to sue or continue to sue Tompkins or Released Parties on your own and at your own expense about any of the Released Claims.

To exclude yourself from the Settlement Class, you must send a letter to the Settlement Administrator identifying:

1. your name, address, telephone number or email address, and the last four digits of your account number;
2. the name and case number of this lawsuit (*Mock v. Tompkins Community Bank*, Case No. 3:22-cv-00995 (N.D.N.Y));
3. a statement that you wish to exclude yourself from the Settlement Class; and
4. your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is postmarked no later than [date]:

Settlement Administrator: [address]

*REQUESTS FOR EXCLUSION FROM THE CLASS THAT ARE NOT POSTMARKED ON OR BEFORE [date] WILL NOT BE HONORED.*

## 9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED?

Objecting means telling the Court that you do not like something about the settlement. You can object to the settlement only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the settlement because it no longer affects you.

## 10. WHAT IF I DO NOTHING AT ALL?

You will remain a member of the Settlement Class and be eligible to receive a cash payment**.** See Part 4 above.

## 11. WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING?

The Court will hold a hearing to decide whether to approve the settlement and any requests for fees, expenses, and Service Award (the "Final Approval Hearing"). The Final Approval Hearing is currently set for [date] at [time], at the United States District Court for the Northern District of New York **[or via Zoom]**, James M. Hanley Federal Building & U.S. Courthouse 100 S. Clinton St., Syracuse, NY 13261. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Court's docket or the settlement website for updates.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. The Court will also consider the request by Class Counsel for attorneys' fees and expenses and Service Award for the Class Representative. If there are objections, the Court will consider them at the Final Approval Hearing. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

You may attend the hearing, at your own expense, but you do not have to do so. You cannot speak at the hearing if you exclude yourself from the settlement.

If you have objected to the settlement and want to attend the hearing you must state in your objection that you intend to appear at the Final Approval Hearing either personally or through counsel.

## 12. DOES THIS NOTICE CONTAIN THE ENTIRE SETTLEMENT AGREEMENT?

No. This is only a summary of the settlement. If the settlement is approved and you do not exclude yourself from the Settlement Class, you will be bound by the release contained in the Settlement Agreement, and not just by the terms of this Notice. Capitalized terms in this Notice are defined in the Settlement Agreement. If you wish to view the full Settlement Agreement, you can do so on the settlement website at **www.Mockfeesettlement.com** or write or call the settlement administrator at the address and phone number below for more information.

## 13. WHERE CAN I GET MORE INFORMATION?

For more information, you may call the Settlement Administrator at 1-999-999-9999, or you may contact Class Counsel as set forth in Section 5, above. You may also visit the settlement website at **www.Mockfeesettlement.com**.

**NOTE:** PLEASE **DO NOT** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, TOMPKINS, OR TOMPKINS' COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU.